Argued December 2, 1971, reversed January 6, 1972

STATE OF OREGON, *Appellant, v.* ARLANDA ARTHUR VANCE (No. C-70-11-0500 Cr) and MILTON QUINN VANCE (No. C-70-11-0501 Cr), *Respondents.*

492 P2d 493

*Walter L. Barrie,* Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

*Charles R. Harvey,* Portland, for respondent Arlanda Arthur Vance, and *A. I. Bernstein,* Portland, for respondent Milton Quinn Vance, filed the brief for respondents.

Before SCHWAB, Chief Judge, and LANGTRY and THORNTON, Judges.

## THORNTON, J.

The state appeals from an order suppressing various narcotics and narcotic paraphernalia, which were seized during a search of the home of Milton Vance, one of the defendants herein. The sole ground for suppression was that the officers executing the search warrant failed to comply with Oregon's "knock and announce" statute, ORS 133.290.[1] The state contends that there were exigent circumstances which excused their failure to comply with the statute.

On November 18, 1970, Officer Giani of the Portland Police Department obtained a warrant to search the person of Milton Vance and the premises where

---

[1] ORS 133.290 provides that an officer may force entry if after notice of his authority and purpose he is refused admission. ORS 141.110 provides that the officer has the same power of forcible entry in the execution or service of a search warrant that he has in the execution or service of a warrant of arrest.

he resided for narcotics and narcotic paraphernalia. The affidavit made by Officer Giani to support the issuance of the warrant included information that marihuana was being sold on the premises and that Milton Vance carried an automatic handgun on his person in case anyone tried to "rip him off."

At 11:40 p.m. on November 18, 1970, eight police officers in plain clothes went to the premises, in a predominantly Negro neighborhood, to execute the warrant. Four of the officers were deployed around the back of the home. Officer Giani and the remaining three officers went to the front door. As Officer Giani approached the door, one of the occupants parted the curtains covering the glass portion of the door, looked out and observed the officers. The curtains were then closed and Officer Giani heard footsteps rapidly retreating from the door. He announced in a loud voice that they were police. Almost simultaneously the officers smashed open the door with a battering ram. The search that followed uncovered various narcotics and narcotic paraphernalia.

■ ORS 133.290 provides that a forced entry may only be made after the police have announced their authority and purpose and been denied entry. The state contends that the officers had good reason to believe that if they delayed their entry to comply with ORS 133.290, they would subject themselves to increased peril and that evidence would be destroyed. In *State v. Mitchell et al*, 6 Or App 378, 387, 487 P2d 1156 (1971), Sup Ct *review denied* (1972), we said that compliance with the "knock and announce" statute would be excused when

"* * * (1) the police possess information which would lead them to reasonably believe the evidence would be destroyed, or (2) reasonably believe a

culprit might escape, or (3) reasonably believe the police might face increased peril." *State v. Steffes,* 2 Or App 163, 465 P2d 905, Sup Ct *review denied* (1970) ; *People v. Maddox,* 46 Cal2d 301, 294 P2d 6, *cert denied* 352 US 858, 77 S Ct 81, 1 L Ed 2d 65 (1956).

■ We agree with the state's contention that the officers had good reason to believe that delaying their entry would increase their peril because of the above-mentioned handgun. As this is sufficient to require reversal, we do not reach the state's further contention that delay would have resulted in the destruction of the evidence sought. In *State v. Steffes,* supra, we held that an unannounced entry was justified because of the danger to the police officers. The facts known to the police in *Steffes* were that he had recently been released from the penitentiary and that a gun had been used in the robberies for which he was sought.

In the present case the officers had information that the subject of the search warrant was armed. As the officers approached the door, they saw someone at the door look out and observe them. Officer Giani testified that based on his experience the mere fact that four white persons were coming to the residence would lead those inside to suspect that they were police. When the curtain was then dropped and foot-steps were heard rapidly retreating from the door, we think that the officers were justified in concluding that further delay would increase their peril. The actions of the person who observed the officers approaching the door, coupled with the information which the officers had that the subject of the search warrant was armed, provided exigent circumstances excusing the officer's noncompliance with ORS 133.290.

Reversed.