[No. 1575-2.    Division Two.    June 21, 1976.]

THE STATE OF WASHINGTON, *Respondent*, v. CHESTER R. MUELLER, *Appellant*.

*William Crawford, Ronald Ness,* and *Stanley G. Williams,* for appellant.

*John C. Merkel, Prosecuting Attorney,* and *Stephen E. Alexander, Deputy,* for respondent.

PEARSON, J.—The defendant, Chester R. Mueller, appeals from his conviction on one count of delivery of a controlled substance and three counts of possession of controlled substances. This matter first came before us in September 1975 on defense counsel's motions to withdraw and to dismiss

the appeal pursuant to *Anders v. California,* 386 U.S. 738, 18 L. Ed. 2d 493, 87 S. Ct. 1396 (1967). Because this court found, after careful review of the record, that the appeal was not wholly frivolous, counsel's motions were denied and the case was remanded to the superior court for appointment of additional counsel on appeal. *See High v. Rhay,* 519 F.2d 109 (9th Cir. 1975). Additional counsel submitted a brief on behalf of the defendant and argued the appeal on its merits.

The sole issue in this case is whether the trial court properly refused to suppress drugs seized by police after their allegedly unlawful entry onto a premises to execute a search warrant. For the reasons stated below, we find the evidence was properly admitted and affirm the conviction.

The facts are essentially undisputed. On June 1, 1974, at approximately 1 a.m., two Bremerton police officers and two officers from the Kitsap County Sheriff's office approached a Bremerton apartment house to execute a search warrant for controlled substances at a second-floor apartment. They had information that a party was in progress in the apartment and that drugs were in use. The officers noticed the apartment windows were open and numerous persons appeared to be moving around inside. One of the officers remained outside to watch the windows; the other three entered the building.

With their badges and search warrant clearly visible, the officers inside, who were not in uniform, approached the apartment through a hallway which terminated at an open door leading directly to the apartment kitchen. Two persons in the kitchen were clearly visible. One of them, John Carrigan, was known to two of the officers from several prior drug-related encounters. When they were about 10 feet from the doorway, Carrigan saw the officers and appeared to recognize them. He immediately backed toward the living room door, running into some tables and chairs which impeded his progress sufficiently to enable the officers to apprehend him before he got to the living room.

The officers testified they thought Carrigan was attempt-

ing to alert others who the officers feared would try to destroy any drugs on the premises. They stated that as they approached the door, they slowed and either just before, contemporaneously with, or just after crossing the threshold one of them announced their identity and their purpose. Carrigan was then handed the search warrant.

Several persons were discovered in the living room, including the defendant, who was sitting on the floor. One of the officers approached the defendant, who struck him with his hand and at the same time threw a plastic baggie away from his body. The baggie was later found to contain controlled substances, including marijuana, phencyclidine, and barbituric acid. It is this evidence which was the subject of defendant's motion to suppress.

Defendant contends the search warrant was illegally executed and therefore the drugs were illegally seized. His argument is grounded on the contention that the officers made an unannounced entry, in violation of RCW 10.31.040, amendment four to the United States Constitution, and article 1, section 7 of the Washington Constitution.

The trial court, in its oral decision denying defendant's motion, made no finding as to whether the officers gave notice of their identity and purpose prior to entering the apartment. Instead, he found that even if their entry was unannounced it was justified by exigent circumstances in that Carrigan probably knew of the officers' authority and purpose, and because the officers reasonably believed, upon observing Carrigan's conduct, that he was attempting to warn others on the premises of the officers' presence, which was likely to lead to the destruction of evidence.[1]

---

[1] In *Ker v. California*, 374 U.S. 23, 10 L. Ed. 2d 726, 83 S. Ct. 1623 (1963), the unannounced entry of police officers was upheld by a divided court. Four justices dissented from that part of the decision, believing the entry in *Ker* was unreasonable under the Fourth Amendment. The dissenters recognized, however, three exceptions to the amendment's prohibition against unannounced police intrusion:

  (1) where the persons within already know of the officers' authority and purpose, or (2) where the officers are justified in the belief that persons within are in imminent peril of bodily harm, or (3) where those within, made aware of the presence of someone outside (be-

■ Constitutional and statutory requirements compel law enforcement officers, prior to entering a private residence for the purpose of arrest or search, to first give notice of their office and purpose.[2] Failure to comply with this rule renders an unannounced entry unlawful and any evidence seized pursuant thereto inadmissible. *State v. Young*, 76 Wn.2d 212, 455 P.2d 595 (1969). An exception to the required announcement of identity and purpose arises where sufficient "exigent and necessitous circumstances exist" to justify bypassing the rule. *State v. Young, supra* at 217.

■ Assuming for the purpose of this opinion that the officers failed to announce their identity and purpose prior to entering the apartment, the issue then is whether the evidence presented at the suppression hearing was constitutionally sufficient to support the trial court's finding that sufficient exigent circumstances existed to justify the entry. *Ker v. California*, 374 U.S. 23, 10 L. Ed. 2d 726, 83 S. Ct. 1623 (1963); *State v. Dugger*, 12 Wn. App. 74, 528 P.2d 274 (1974). An unannounced entry, where possible destruction of evidence is in question, will be upheld only where the intruding officers were confronted with some sort of contemporaneous sound or activity alerting them to probable immediate or actual destruction of evidence. *State v. Harris*, 12 Wn. App. 481, 530 P.2d 646 (1975). *See also State v. Johnson*, 11 Wn. App. 311, 522 P.2d 1179 (1974); *State v. Neff*, 10 Wn. App. 713, 519 P.2d 1328 (1974); *State v. Singleton*, 9 Wn. App. 399, 512 P.2d 1119 (1973).

In the present case, the officers reasonably believed that

---

cause, for example, there has been a knock at the door), are then engaged in activity which justifies the officers in the belief that an escape or the destruction of evidence is being attempted.

*Ker v. California, supra* at 47. In this connection, Judge Bryan concluded that the circumstances in the present case came within exceptions (1) and (3) above. The exceptions announced by the *Ker* minority have been noted in *State v. Harris*, 12 Wn. App. 481, 530 P.2d 646 (1975) and *State v. Miller*, 7 Wn. App. 414, 499 P.2d 241 (1972). *See also State v. Young*, 76 Wn.2d 212, 455 P.2d 595 (1969).

[2]U.S. Const. amend. 4; Const. art. 1, § 7; RCW 10.31.040.

Carrigan, because of their past encounters, recognized them before they reached the door. His rapid movement toward the living room was sufficient to support their belief that he was attempting to warn others inside of their presence. It is clear the officers were attempting to comply with the knock and announce rule and at the same time prevent Carrigan from doing anything to secure destruction of evidence. As one of the officers testified

> [T]he door was open, we were walking down the hall . . . I saw Carrigan who knew me and I would—I knew that I'm supposed to be outside and announce my purpose before entering. It just happened so quick, it would be awfully close, one way or the other.

Considering all the circumstances, the conduct of the officers was clearly reasonable and constitutionally permissible. See State v. Neff, supra. Securing Carrigan immediately was the only method the officers had available to preclude what they reasonably anticipated would lead to an immediate destruction of evidence.

Since the officers' entry was lawful, the drugs found subsequent thereto were lawfully obtained. The trial court was correct in refusing to suppress this evidence.

Judgment affirmed.

PETRIE, C.J., and REED, J., concur.