Argued January 17, resubmitted in banc April 12, reversed and remanded
May 30, reconsideration denied July 12, petition for review allowed
November 7, 1978

STATE OF OREGON, *Appellant,*

*v.*

KENT GALLANT OLSON, *Respondent.*

(No. C 76-12-17439, DA 129621, CA 8276)

579 P2d 277

John W. Burgess, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were James A. Redden, Attorney General, and Al J. Laue, Solicitor General, Salem.

William N. Mehlhaf, Portland, argued the cause and filed the brief for respondent.

SCHWAB, C. J.

**SCHWAB, C. J.**

This is an appeal by the State from an order suppressing evidence.

The Fourth Amendment to the United States Constitution has been interpreted as requiring police officers, before they enter a private residence, to "knock and announce." *Ker v. California,* 374 US 23, 83 S Ct 1623, 10 L Ed 2d 726 (1963); *State v. Valentine/Darroch,* 264 Or 54, 504 P2d 84 (1972), *cert den* 412 US 948 (1973); *State v. Gassner,* 6 Or App 452, 488 P2d 822 (1971). The question in this case is what is the minimum federal constitutionally required "announcement."

Three police officers went to defendant's residence between 10 and 11 p.m. The trial court concluded that the officers had probable cause to arrest defendant for burglary; there is evidence to support this conclusion. In addition, we note that the same information gave the officers probable cause to search defendant's residence for property stolen in a residential burglary reported a couple of hours earlier. The officers thus had the right to enter defendant's residence upon either the basis of probable cause to arrest or probable cause to search. The problem involves their method of entry.

The officers knocked on defendant's front door and announced their identity, "This is the sheriff's office." Receiving no response, they forced open the door and entered defendant's residence. The officers never stated their purpose or reason for desiring entry before they in fact entered.

Courts have frequently stated that the constitutionally required pre-entry announcement must include the officer's "presence and purpose": *e.g., State v. Valentine/Darroch, supra,* 264 Or at 60, 66. *See also, State v. Newman,* 12 Or App 266, 270, 506 P2d 523 (1973). But we find no cases, decided on *constitutional* grounds, that really test that formulation with facts

like we now have—announced identity and presence, but no announced purpose.[1]

In the absence of controlling authority, we conclude that the question of the extent of the minimum announcement constitutionally required should be answered by looking to the purposes to be served by requiring any announcement. The Oregon Supreme Court has told us:

"* * * [I]t appears that the announcement requirement has been given federal constitutional status (1) to protect persons who might be injured by violent resistance to unannounced entries by law enforcement officers, and (2) to protect the householder's right to privacy * * *." *State v. Valentine/Darroch, supra,* 264 Or at 60.

It might reasonably be contended that the more detail officers shout through a closed door before forcing entry, the greater will be the protection against violence and the greater will be the protection of privacy. And an individual officer's assessment of how to do his job safely and effectively might in a given situation produce a more detailed pre-entry announcement than occurred in this case. But the question is not what might be desirable or undesirable in various situations; the question is what is the constitutionally required minimum announcement in all situations. We must draw a line.

We draw that line by holding the present announcement, "This is the sheriff's office," constitutionally

---

[1] There is a federal knock-and-announce statute, and many states have knock-and-announce statutes. We do not find decisions applying these statutes helpful in resolving a constitutional question.

There is also an Oregon knock-and-announce statute. It is irrelevant to the present suppression issue because the Supreme Court has held that evidence obtained in violation of that statute is not subject to suppression. *State v. Valentine/Darroch,* 264 Or 54, 504 P2d 84 (1972), *cert den* 412 US 948 (1973).

There is no Oregon constitutional issue. Although the Oregon Supreme Court has frequently stated that similar provisions of the state and federal constitutions are to be given similar interpretations, *State v. Flores,* 280 Or 273, 570 P2d 965 (1977); *State v. Florance,* 270 Or 169, 527 P2d 1202 (1974), the court deviated from that approach in *State v. Valentine/Darroch, supra,* finding no knock-and-announce requirement in the Oregon Constitution.

adequate. Viewed in light of the reasons for the rule, we fail to see how requiring more in all situations will significantly minimize the likelihood of violence or significantly add to the protection of privacy.[2]

Reversed and remanded.

**JOSEPH, J.,** dissenting.

The majority has chosen to summarize the facts in a manner which suggests either that they do not matter much or that the police conduct was outrageous but acceptable. I begin therefore with my own, and of course typically balanced, statement of the facts in some detail.

At approximately 8 p.m., a police officer went to investigate a residential burglary. He was informed by the victim that among the items taken were a stereo set, firecrackers, a metal box containing personal papers, a .22 caliber pistol and, possibly, some ammunition for the pistol. He also learned that a certain teenage boy had been seen earlier in the evening near the residence where the crime occurred. The officer found the boy and questioned him. Although he denied knowledge of the burglary, the boy did say that he and defendant had been around the residence looking for defendant's dog. Firecrackers identified as those taken in the burglary were found in the boy's possession. He explained that he had received the firecrackers from defendant, whose address he gave the officer.

The officer, accompanied by the boy and two other police officers, went to defendant's house, located in a

---

[2]Defendant claims there is a second issue in this case: whether, absent exigent circumstances, a warrant is required to arrest a person in his home. *See, State v. Girard,* 276 Or 511, 514, 555 P2d 445 (1976). However, no such contention was advanced by defendant's written motion to suppress. There was some reference to the warrant issue during arguments to the trial court, and the court's findings—drafted by defense counsel—do refer to it. But on this record we simply cannot tell whether the parties before the trial court ever really identified the warrant question as a separate issue, and therefore we decline to reach it. On remand, we do not intend anything in this opinion to foreclose further exploration of the warrant issue.

remote area. They had no arrest or search warrant. When they arrived, between 10 and 11 p.m., there were no lights on in the house. The boy identified the car parked outside as defendant's. One officer went to the rear of the house; the other two went to the front door. One officer knocked on the front door and announced, "This is the sheriff's office." He and the other officer then heard a rustling sound from inside the house, "like someone moving about." The door was not opened.

The officer who had knocked on the front door then walked to the rear of the house and shined his flashlight into a window. As he peered in, he noticed a stereo "on the kitchen table." He returned to the front door and again knocked and announced his identity. Receiving no response, he forced open the door and he and another officer entered the house (without having drawn their weapons). At no time did they announce their purpose in requesting entry. They testified that they were in fear for their safety because of the pistol which they believed was in defendant's possession.

When the officers entered the house, defendant was in bed with his girlfriend. The police informed him of his *Miranda* rights and arrested him. They then conducted an extensive search of the small house and seized various items, including a stereo (from the bathroom) and other items believed to have been taken in the burglary. When asked where the pistol was, defendant replied that it was under the mattress. It was also seized. At no time did defendant consent to the officers' entry or to their search of the house.

Either while still at the house or while on the way to the police station, defendant confessed to his participation in the burglary. Within an hour of his arrival at the station he was asked to and did make a written confession. A short time later the victim of the burglary, who was concerned about the metal box containing his personal papers, came to the station. Upon questioning either by an officer or by the victim

at the direction of the officer, the boy—who had also been arrested—was unable to recall where the box had been abandoned. Defendant volunteered its location. The victim went there and recovered the box.

The trial court suppressed all the items seized at defendant's house, his oral and written confessions and the metal box, on the bases that the entry into defendant's house was illegal because the officers did not announce their purpose and because they should have obtained a warrant, and that the evidence was the fruit of the illegal entry and arrest.[1]

It is now well established under the Oregon statutes[2] *and* the Fourth Amendment that, absent exigent circumstances, police must knock, announce their identity and state their purpose before entering a private dwelling to search or arrest. *Ker v. California,* 374 US 23, 83 S Ct 1623, 10 L Ed 2d 726 (1963); *State v. Valentine/Darroch,* 264 Or 54, 504 P2d 84 (1972), *cert den* 412 US 948 (1973). The majority cites those cases but ignores the "purpose" requirement.

The state argued that the officers were justified in failing to announce their purpose because to do so

---

[1]The trial court also concluded that even if the entry had been proper, the state failed to prove which items of evidence were in plain view and which were within the legitimate scope of a search incident to arrest.

[2]ORS 133.235(5) and (6):

"(5) In order to make an arrest, a peace officer may enter premises in which he has probable cause to believe the person to be arrested to be present.

"(6) If after giving notice of his identity, authority and purpose, the officer is not admitted, he may enter the premises, and by a breaking, if necessary."

ORS 133.575(1) and (2):

"(1) A search warrant may be executed only within the period and at the times authorized by the warrant and only by a police officer. A police officer charged with its execution may be accompanied by such other persons as may be reasonably necessary for the successful execution of the warrant with all practicable safety.

"(2) The executing officer shall, before entering the premises, give appropriate notice of his identity, authority and purpose to the person to be searched, or to the person in apparent control of the premises to be searched, as the case may be."

would have placed them in increased peril. In circumstances where it reasonably appears to police officers that the risks of unannounced entry are outweighed by the risks of making an announcement, an exception to the knock and announce requirements has been recognized. *State v. Steffes,* 2 Or App 163, 465 P2d 905, *rev den* (1970); *State v. Vance,* 7 Or App 566, 492 P2d 493 (1972); *State v. Larkins,* 8 Or App 162, 493 P2d 172 (1972). To conclude in this case that the police could reasonably have believed that a statement of purpose would have increased their danger would vitiate those prior cases, which reflect efforts to accommodate the rights of criminal suspects with the safety of police officers. Here the officers knocked and announced their identity, milled about outside the house, shined a light into a window, peered inside and then knocked and announced their identity a second time before forcing the door open. It surpasses belief that a simple statement of purpose would have increased their peril. The majority has announced a rule that says there is a constitutional preference for entry without announcement of purpose and that the police shall determine what to announce. That is a very curious doctrine.

The state argued additionally that defendant knew why the police were there and that a statement of purpose would have been useless. That is tantamount to saying that whenever the police have probable cause to believe the occupant of a dwelling has recently committed a crime they need only state their identity and the suspect will know why they are there. In support of this contention the state cites *State v. Newman,* 12 Or App 266, 506 P2d 523 (1973). In that case we held only that the manner of stating identity and purpose could vary with the circumstances. The majority has adopted the state's position as *constitutional law.* That has the sole virtue of being unique.

In applying the federal knock and announce statute, the Supreme Court *has* recognized that in some circumstances the police will be justified in assuming that the suspect knows why they have come to his

residence. *Miller v. United States,* 357 US 301, 78 S Ct 1190, 2 L Ed 2d 1332 (1958). But that exception to the knock and announce requirement has not been given the broad scope the majority now does. In *Miller* the court observed that

> "* * * [i]t may be that without an express announcement of purpose, the facts known to officers would justify them in being *virtually certain* that the [suspect] already knows their purpose so that an announcement would be a useless gesture." 357 US at 310. (Emphasis supplied.)

In that case the court held that the fact that defendant attempted to close the door in the officers' faces did not establish that he knew why they were there. *See also Wong Sun v. United States,* 371 US 471, 83 S Ct 407, 9 L Ed 2d 441 (1963).

The requirement of a statement of purpose is intended to further significant interests, not only by protecting privacy, but also by preventing violence. When the police resort to force to gain entry, the chances are greater that they will be met with a violent reaction. *See State v. Valentine/Darroch, supra.* People cannot always be expected peacefully to open their doors to the police without knowing why the police wish to enter. An express statement of purpose to ensure that knowledge is not an onerous requirement. Assuming the police had probable cause to believe defendant had committed the burglary, that fact in itself should not have been sufficient to excuse a statement of purpose.

The majority has indeed drawn a line. Unfortunately the line was drawn right through the Fourth Amendment.

The entry being in violation of ORS 133.235 and the Fourth Amendment as applied to the states by the Fourteenth Amendment, the arrest was invalid. *State v. Jones,* 248 Or 428, 435 P2d 317 (1967). Although a

[ 519 ]

violation of the statute alone would not require suppression of evidence obtained thereby, *State v. Valentine/Darroch, supra,* the federal constitutional violation does. *Mapp v. Ohio,* 367 US 643, 81 S Ct 1684, 6 L Ed 2d 1081 (1961); *Ker v. California, supra.* The items seized at defendant's residence were unquestionably the direct product of the illegal entry, the illegal arrest and the illegal search, and were properly suppressed.

The confessions and the metal box raise more difficult questions concerning the application of the "fruit of the poisonous tree" doctrine announced in *Wong Sun v. United States, supra.* In *Brown v. Illinois,* 422 US 590, 95 S Ct 2254, 45 L Ed 2d 416 (1975), the court suppressed confessions which it found were products of an invalid arrest and search even though the confessions were given after defendant had been apprised of his *Miranda* rights. The court recognized that

"* * * [it] is entirely possible * * * that persons arrested illegally frequently may decide to confess, as an act of free will unaffected by the initial illegality." 422 US at 603.

The court also noted, however:

"* * * In order for the causal chain, between the illegal arrest and the statements made subsequent thereto, to be broken, *Wong Sun* requires not merely that the statement meet the Fifth Amendment standard of voluntariness but that it be 'sufficiently an act of free will to purge the primary taint.' * * * *Wong Sun* thus mandates consideration of a statement's admissibility in light of the distinct policies and interests of the Fourth Amendment." 422 US at 602.

The burden of proving that the primary taint has been purged is upon the state. *Brown* indicated that the factors to be considered along with *Miranda* warnings in determining admissibility are (1) temporal proximity (to the police misconduct), (2) presence of intervening circumstances and, particularly, (3) the purpose and flagrancy of the official misconduct. 422 US at 603-04.

[ 520 ]

As the Supreme Court found in *Brown,* the record in this case is adequate to make a determination under those criteria. The oral confession was made just after defendant's arrest and the search of his house. The written confession was given within an hour of the arrest. Although the trial court did not find that the police acted in bad faith, the state has failed to point out any intervening circumstances which could have purged the taint of the primary illegality. The confessions were properly suppressed. *See State v. Jones, supra.*

The metal box was also properly suppressed. Although seizure of evidence by a private person is ordinarily not subject to the Fourth Amendment, *Burdeau v. McDowell,* 256 US 465, 41 S Ct 574, 65 L Ed 1048 (1921); *State v. Bryan,* 1 Or App 15, 457 P2d 661 (1969), where the seizure is a product of illegal police activity, the necessary element of state action is provided by that activity.

While it might have been that defendant disclosed the location of the box voluntarily for some reason unrelated to the arrest and search, it is apparent that the prior seizure of evidence and the prior confessions eliminated any incentive defendant may have had to avoid incriminating statements or acts. I conclude that the state failed to meet its burden of proving the box admissible and that the policies underlying the Fourth Amendment exclusionary rule require suppression.

Buttler, J., joins in this dissent.