586 P.2d 671

STATE of Idaho, Plaintiff-Appellant,

v.

Daniel Charles RAUCH,
Defendant-Respondent.

No. 12563.

Supreme Court of Idaho.

Oct. 24, 1978.

Lynn E. Thomas, Deputy Atty. Gen., Wayne L. Kidwell, Atty. Gen., Thomas C. Chandler, Legal Intern, Boise, for plaintiff-appellant.

Dennis L. Cain of Sallaz, Scanlan, Beer & Cain, Boise, for defendant-respondent.

DONALDSON, Justice.

The state appeals a district court order, pursuant to I.C. § 19–2804(2) (Supp.1976) and Rule 11(c)(4), I.A.R., suppressing certain evidence, on the ground that law enforcement officers failed to comply with Idaho's "knock and announce" statutes, I.C. §§ 19–611, 19–4409, in executing the arrest of the defendant and the subsequent seizure of evidence. The basic facts were established at a hearing on the suppression motion.

The home of the defendant, Daniel Rauch, was under surveillance for suspected drug traffic by the Idaho Bureau of Narcotics. Early in the day an officer had purchased a pound of marijuana from a woman and had followed that woman to the Rauch home. On the evening of August 2, 1976 a number of law enforcement officers gathered near the Rauch home.

After arresting one or two people who had recently left the house, the officers entered the house through both the front and rear doors. The testimony, under cross-examination by a defense attorney, of the narcotics officer in charge is relevant on the manner of entry.

Q. As soon as you arrived at the residence, you entered the residence itself?
A. Yes, sir.
Q. And you were the first to enter the house?
A. Yes, sir.
Q. Prior to entry, Mr. Everett, did you knock on the door?
A. No, sir.
Q. Did you ring the door bell?
A. No, sir.
Q. Did you identify yourself?
A. Not until I entered the residence.
Q. Did you state the purpose for entering the house to the people?
A. Upon entry I did.
Q. Before you entered, though?
A. No, sir, I did not.
Q. Did you, before you entered, did you tell the people why you were requesting admittance into their home?
A. I did not talk to anybody until I entered the residence.

After entering the residence, the officers seized a gym bag which apparently contained a large quantity of marijuana. Approximately one and one-half hours later a search warrant arrived at the scene. Rauch and his wife were charged with possession of marijuana and some cocaine.

Rauch made a motion to suppress the evidence seized during the raid, which motion was granted after a hearing. The court ruled that the entry into the residence did not comply with the "knock and announce" requirements of I.C. §§ 19–611 and 19–4409.[1]

The state admits the officers did not comply with the "knock and announce" statutes, but contends that such noncompliance was justified by exigent circumstances. We expressly adopt the exigent circumstances exception to the "knock and announce" statutes. Here, however, the trial court did not find exigent circumstances necessary to justify noncompliance with these statutes.

### I

Knock and announce statutes have been passed by many states, including Idaho. One of the more litigated statutes, § 844 of the California Penal Code (which is almost identical to I.C. § 19–611), has been explained as being based on four purposes or policies:

---

1. 19–611. Breaking doors and windows.—To make an arrest, if the offense is a felony, a private person, if any public offense, a peace officer, may break open the door or window of the house in which the person to be arrested is, or in which there is reasonable ground for believing him to be, after having demanded admittance and explained the purpose for which admittance is desired.

19–4409. Service of warrant—Breaking open doors.—The officer may break open any outer or inner door or window of a house, or any part of a house, or any thing therein, to execute the warrant, if, after notice of his authority and purpose, he is refused admittance.

(1) the protection of the privacy of the individual in his home (see *Sabbath v. United States*, supra, 391 U.S. 585, 589, 88 S.Ct. 1755, 20 L.Ed.2d 828; *Miller v. United States*, supra, 357 U.S. 301, 313, 78 S.Ct. 1190, 2 L.Ed.2d 1332; *Greven v. Superior Court*, supra, 71 A.C. 303, 308 (71 Cal.2d 287), 78 Cal.Rptr. 504, 455 P.2d 432; *People v. Maddox* (1956) 46 Cal.2d 301, 306, 294 P.2d 6); (2) the protection of innocent persons who may also be present on the premises where an arrest is made (see *People v. Rosales*, supra, 68 Cal.2d 299, 304, 66 Cal.Rptr. 1, 437 P.2d 489); (3) the prevention of situations which are conducive to violent confrontations between the occupant and individuals who enter his home without proper notice (*Greven v. Superior Court*, supra, 71 A.C. 303, 308–309 (71 Cal.2d 287), 78 Cal.Rptr. 504, 455 P.2d 432); see *Sabbath v. United States*, supra, 391 U.S. 585, 589, 88 S.Ct. 1755, 20 L.Ed.2d 828; *Miller v. United States*, supra, 357 U.S. 301, 313, fn. 12, 78 S.Ct. 1190, 2 L.Ed.2d 1332; *People v. Rosales*, supra, 68 Cal.2d 299, 304, 66 Cal. Rptr. 1, 437 P.2d 489; and (4) the protection of police who might be injured by a startled and fearful householder.

*Duke v. Super. Ct. of Los Angeles County*, 1 Cal.3d 314, 82 Cal.Rptr. 348, 352, 353, 461 P.2d 628, 632–633 (1969).

The landmark case of *Ker v. California*, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963) approved the exigent circumstances exception to the "knock and announce" statutes. In *Ker*, failure to comply with the "knock and announce" statutes of California was justified by the trial court and affirmed by the California District Court of Appeals. After the California Supreme Court denied a hearing, the United States Supreme Court found the following exigent circumstances:

> Here justification for the officers' failure to give notice is uniquely present. In addition to the officers' belief that Ker was in possession of narcotics, which

could be quickly and easily destroyed, Ker's furtive conduct in eluding them shortly before the arrest was ground for the belief that he might well have been expecting the police. We therefore hold that in the particular circumstances of this case the officers' method of entry, sanctioned by the law of California, was not unreasonable under the standards of the Fourth Amendment as applied to the States through the Fourteenth Amendment.

*Id.* at 40–41, 83 S.Ct. at 1633.[2]

A plethora of precedent has outlined exactly what factors will be held to constitute exigent circumstances. *State v. Vance*, 7 Or.App. 566, 492 P.2d 493 (1972), found exigent circumstances to excuse noncompliance. In that case eight white policemen went into a black neighborhood to execute a search warrant for narcotics. The warrant was based on an affidavit which also stated that the defendant carried an automatic pistol on his person. As the officers approached the house, the curtains on the window were parted and the officers were observed. The curtains then closed and the lead officer heard footsteps rapidly retreating from the door. The Court of Appeals of Oregon found this situation met the exigent circumstances exception because of the peril from the handgun.

In *People v. Maddox*, 46 Cal.2d 301, 294 P.2d 6 (1956), the police had been watching the home of the defendant for some time. A person who had just come out of the house told the police outside that he had just bought some heroin from the defendant. The police approached the door and knocked. A male voice said, "Wait a minute" and then retreating footsteps were heard. In excusing the noncompliance with the "knock and announce" statute, Justice Traynor explained: "When as in this case, he has reasonable grounds to believe a felony is being committed and hears retreating footsteps, the conclusion that his peril

---

**2.** Like *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), "*Ker* is a graphic illustration of the inability of the Justices to agree in search and seizure cases." 112 U. of Penn.L.R. 499, 539 (1964). *Ker* was a 5–4 decision with Justice Harlan concurring in the result only.

would be increased or that the felon would escape if he demanded entrance and explained his purpose, is not unreasonable." *Id.*, 294 P.2d at 9.

■ A case by case analysis must be made to determine if exigent circumstances exist as there can be no blanket exceptions. *People v. Rosales*, 68 Cal.2d 299, 66 Cal. Rptr. 1, 437 P.2d 489 (1968); *State v. Mitchell*, 6 Or.App. 378, 487 P.2d 1156 (1971).

The general circumstances which have been found to constitute exigent circumstances are (1) a reasonable belief that compliance with a "knock and announce" statute would result in the destruction of evidence, or (2) a reasonable belief that compliance would place the officer in peril. *See People v. Tribble*, 4 Cal.3d 826, 94 Cal.Rptr. 613, 484 P.2d 589 (1971); *State v. Clarke*, 242 So.2d 791 (Fla.Ct.App.1970).

*State v. Mitchell, supra,* had the factor of a small amount of narcotics which could have been disposed of easily. In State v. Brothers, 12 Or.App. 435, 507 P.2d 398 (1973), the search warrant specifically was for a small, easily disposed of amount of heroin. In addition the defendants were warned of the police approach by barking dogs. *State v. Mueller*, 15 Wash.App. 667, 552 P.2d 1089 (1976) found exigent circumstances in that the police were easily recognizable as such and that someone saw them approaching and ran into the apartment ahead of them.

The Supreme Court of Arizona addressed the standard for finding exigent circumstances.

While the evidence in some cases might well be such as to provide reasonable cause for officers to believe that their announcement of the purpose of their entry would cause the search to be frustrated, such is lacking in the instant case. It must be more than the presumption that the evidence *would* be destroyed because it *could* be easily done. There must be substantial evidence which would cause the officers to believe that such evidence would be destroyed if their presence were announced.

*State v. Mendoza*, 104 Ariz. 395, 454 P.2d 140, 144–45 (1969).

■ An examination of the record in this case supports the trial court's finding of lack of exigent circumstances. In the words of the trial judge below, "evidence completely failed to show any exigent circumstances which would excuse compliance with the knock and announce requirements of the statutes before the entry." It is true, as the dissent points out, that the trial judge found that the evidence "demonstrated that at the time of the entry, exigent circumstances existed which gave probable cause for believing that entry was needed to secure the house and monitor the residents before the search warrant arrived to prevent removal of contraband from the house." But as the trial judge stated:

No inconsistency exists between the finding of the existence of probable cause to enter and secure the house until a search warrant could be obtained and the finding that no exigent circumstances existed which would allow the officers to ignore the knock and announce statute. This is because of the entirely different time frames involved. The wait for the search warrant could have involved several hours during which the officers had good reason to believe the contraband would be removed from the house or destroyed. However, the time involved in compliance with the knock and announce statute is a few minutes at most. To create exigent circumstances which would justify a belief that evidence would be lost in that time frame requires evidence such as *furtive or rapid movements* in the house or warning calls within the house. Independent grounds could exist where there is *evidence of weapons* in the house which would endanger the lives of the officers if they announced their presence. *No evidence was presented in this case to create either such exigent circumstance.* (emphasis added)

■ The term "exigent circumstances" refers to a catalogue of exceptional or compelling circumstances which in various situations allow police to enter, search, seize

and arrest without complying with the warrant requirements of the United States Constitution or in the case of unannounced entries to search, without complying with federal or state "knock and announce" statutes. *See Accarino v. United States*, 85 U.S.App.D.C. 394, 179 F.2d 456 (1949); *State v. Sanchez*, 88 N.M. 378, 540 P.2d 858 (1975). In the context of "knock and announce" statutes, "exigent circumstances" may refer to those immediate circumstances where a defendant may be armed, where evidence may be easily and immediately destroyed, where a defendant may escape or where a defendant has engaged in furtive conduct. In the context of warrantless entries and arrests, courts consider six factors to determine if "exigent circumstances" are present: (1) the gravity or violent nature of the offense with which the suspect is to be charged; (2) whether the suspect is reasonably believed to be armed; (3) a clear showing of probable cause; (4) a strong reason to believe the suspect is in the premises to be entered; (5) the likelihood that the suspect will escape if not swiftly apprehended; (6) the peaceful circumstances of the entry. *Dorman v. United States*, 140 U.S.App.D.C. 313, 320, 435 F.2d 385, 392 (1970).

■ It is apparent that the term "exigent circumstances" in the "knock and announce" context does not necessarily, although it may, carry the same meaning as it does in the warrantless entry and warrantless arrest context. In this case as the trial court explicitly noted, the time frame involved gave probable cause to enter and secure the Rauch premises without a warrant but did not excuse the necessity of complying with Idaho's "knock and announce" statute. There was no urgency which justified noncompliance with the statute even though there was probable cause to enter and secure the premises.

It is also interesting to note that the exigent circumstance exceptions to "knock and announce" statutes in this country have evolved only from cases dealing with "knock and announce" situations rather than cases involving warrantless entries and arrests. *See* 55 Minn.L.R. 871 (1971).

## II

■ The suppression hearing below consisted of the testimony of two persons, Rauch and the narcotics officer who led this episode. The testimony of the narcotics officer was that in his opinion immediate entry and noncompliance was necessary because he feared the people in the house may have been aware of the presence of the officers outside. The officer based this fear on the fact that two people had been arrested in front of the house and that some police cars had arrived quickly at the scene. No evidence or suspicion of any firearms or peril to police was claimed. Further, the officer testified that he did not know if any of this activity was observed by anyone in the house.

After hearing this evidence, the judge concluded that:

> The case is another example of excellent police work which is nullified by an apparently intransigent belief on the part of the officers working in drug enforcement that the statutory requirements of Sections 19–611, and 19–4409, Idaho Code, aren't applicable to narcotics investigations. . . .
>
> . . . . . .
>
> Under the evidentiary record in this case any belief on the part of the officers that exigent circumstances existed which would preclude taking the few minutes required to comply with the knock and announce statute had to be based on *sheer speculation*. (emphasis ours)

As the discussion above shows, sheer speculation is not enough grounds to ignore the "knock and announce" statutes.

The state on appeal argues that the officer's testimony provided exigent circumstances to justify non-compliance with the "knock and announce" statute. The cases cited by the state do not provide any help for the lack of a factual basis to create the necessity to ignore the statute.

## III

Once it is determined that the officer's entry was unlawful, the effect of this find-

ing must be explored. From earliest days, the common law limited the authority of law enforcement officers to break the door of a house to effect an arrest. *See Accarino v. United States, supra.* "Such action invades the precious interest of privacy summed up in the ancient adage that a man's house is his castle." *Miller v. United States,* 357 U.S. 301, 307, 78 S.Ct. 1190, 1194, 2 L.Ed.2d 1332 (1958).

As stated in Semayne's Case, 77 Eng.Rep. 194 (1603):

> In all cases where the King is party, the sheriff (if the doors be not open) may break the party's house, either to arrest him, or to do other execution of the K[ing]'s process, if otherwise he cannot enter. But before he breaks it, he ought to signify the cause of his coming, and to make request to open doors. . . .

*Id.* at 195.

■ This basic right to be secure in a person's home, guaranteed by the fourth amendment, has resulted in statutes like I.C. §§ 19–611 and 19–4409. *People v. Ramey,* 16 Cal.3d 263, 127 Cal.Rptr. 629, 545 P.2d 1333 (1976). The exclusionary rule has been the basic guarantor of freedom from illegal police action. *Weeks v. United States,* 232 U.S. 383, 34 S.Ct. 341, 344, 58 L.Ed. 652 (1914) accurately described the purpose of the exclusionary rule.

> If letters and private documents can thus be seized and held and used in evidence against a citizen accused of an offense, the protection of the Fourth Amendment, declaring his right to be secure against such searches and seizures, is of no value, and, so far as those thus placed are concerned, might as well be stricken from the Constitution. The efforts of the courts and their officials to bring the guilty to punishment, praiseworthy as they are, are not to be aided by the sacrifice of those great principles established by years of endeavor and suffering which have resulted in their embodiment in the fundamental law of the land.

After *Weeks* it was only a matter of time before the exclusionary rule was mandated upon the states by the fourteenth amendment. *Mapp v. Ohio, supra.*

■ The essence of forbidding the acquisition of evidence in a certain manner is that the evidence is not only inadmissible in court, it shall not be used at all. *Silverthorne Lumber Co. v. United States,* 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920). In the converse, evidence obtained completely independently of the illegal search may be admissible. *Nardone v. United States,* 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307 (1939); *Machado v. Super. Ct., County of Stanislaus,* 45 Cal.App.3d 316, 119 Cal. Rptr. 344 (1975).

■ The very need for compliance with "knock and announce" statutes and the great danger from noncompliance requires strict enforcement. Other courts that have addressed that issue have excluded, absent exigent circumstances, evidence seized as a result of failure to comply with the appropriate statute.

In *People v. Gastelo,* 67 Cal.2d 586, 63 Cal.Rptr. 10, 432 P.2d 706 (1967), even though the evidence was seized under a proper search warrant, because the "knock and announce" statute had not been complied with in execution of the warrant, the evidence was excluded.

The State of Washington has come to the same conclusion. *State v. Lowrie,* 12 Wash. App. 155, 528 P.2d 1010 (1975). In *State v. Mendoza, supra,* evidence obtained as a result of an illegal search (noncompliance with the "knock and announce" statute) was excluded even though the officers had a valid search warrant.

■ Idaho law must follow a similar course. The value of the exclusionary rule was recognized by this Court long before the United States Supreme Court required it for fourth amendment violations. As this Court explained in applying the exclusionary rule to evidence illegally seized: "The rule is well settled in this state that evidence, procured in violation of defendant's constitutional immunity from search and seizure, is inadmissible and will be excluded

if request for its suppression be timely made." *State v. Conner,* 59 Idaho 695, 703, 89 P.2d 197, 201 (1939).

As long ago as 1918, Justice Morgan became a predictor for the necessity to exclude illegally seized evidence.

> In order that the total disregard, disclosed by this record, of these constitutional safeguards may be effectual, the court must become a party to it by receiving the results as proof. I decline to do so, and hold that evidence procured by an illegal or unreasonable search, the purpose of which was to discover and seize it, is inadmissible if timely and proper objection be made to its introduction, because it was procured by an invasion of the rights guaranteed to all persons within this state by sec. 17, art. 1, of the Constitution, and to admit it, against a defendant in a criminal case over such an objection, would be a violation, by the court, of sec. 13 thereof.
>
> These sections are guardians of American liberty and justice which come to us from the same source and with like sacrifice as did those, equally but not more greatly prized, whereby we are guaranteed religious liberty, trial by jury, the right to bear arms, to peaceably assemble, free speech, liberty of the press, and many other constitutional safeguards, which, because they have been faithfully upheld by the courts, have accomplished more than has any other agency to make this government one which the peoples of the earth may profitably copy.

*State v. Anderson,* 31 Idaho 514, 527, 174 P. 124, 129 (1918) (Morgan, J., dissenting).

 The very sanctity of the home that underlies the passage of "knock and announce" statutes, *Miller v. United States, supra,* requires that we exclude evidence seized as a result of the violation of those statutes.

IV

 Once it is determined that the law was broken by the entry, evidence discovered or seized as a result of the illegal entry must be excluded. *Greven v. Super. Ct. of County of Santa Clara,* 71 Cal.2d 287, 78 Cal.Rptr. 504, 455 P.2d 432 (1969); *People v. Rosales, supra; State v. Lowrie, supra.* There is substantial evidence to justify the trial judge's finding that exigent circumstances did not exist to excuse noncompliance with the "knock and announce" statutes. The trial judge specifically found that there was *no evidence* presented which indicated that there were weapons in the house or that there was furtive conduct in the house which would justify the belief that evidence would be lost in the time it would have taken to comply with the "knock and announce" statute. It was therefore proper to grant the suppression motion. Any other result would completely nullify the "knock and announce" statutes and would create a dangerous situation for citizen and policeman alike.[3] As the United States Supreme Court explained in *Miller v. United States, supra* :

> We are duly mindful of the reliance that society must place for achieving law and order upon the enforcing agencies of the criminal law. But insistence on observance by law officers of traditional fair procedural requirements is, from the long point of view, best calculated to contribute to that end. However much in a particular case insistence upon such rules may appear as a technicality that inures to the benefit of a guilty person, the history of the criminal law proves that tolerance of shortcut methods in law enforcement impairs its enduring effectiveness. The requirement of prior notice of authority and purpose before forcing entry into a home is deeply rooted in our heritage and should not be given grudging application. Congress, codifying a tradition embedded in Anglo-American

---

3. The "knock and announce" statutes do not require that police wait for any appreciable time before entering a house after they have complied with the statute. In the circumstances of this case, if the police would have knocked, demanded admittance and explained the purpose for which they desired admittance, they would have complied with I.C. § 19–611 and could have entered immediately without delay.

law, has declared in § 3109 the reverence of the law for the individual's right of privacy in his house. Every householder, the good and the bad, the guilty and the innocent, is entitled to the protection designed to secure the common interest against unlawful invasion of the house. The petitioner could not be lawfully arrested in his home by officers breaking in without first giving him notice of their authority and purpose. Because the petitioner did not receive that notice before the officers broke the door to invade his home, the arrest was unlawful, and the evidence seized should have been suppressed.

*Id.*, 357 U.S. at 313–314, 78 S.Ct. at 1197. Affirmed.

BAKES and BISTLINE, JJ., concur.

SHEPARD, Chief Justice, dissenting.

In my judgment, the majority opinion today escalates a simple statutory problem of law enforcement into constitutional dimensions. That result, I suggest, is not required by the decisions of the United States Supreme Court, is unnecessary, unwarranted, improvident and will have a long and lasting adverse effect on the ability of law enforcement officials in Idaho to adequately enforce our criminal laws and protect our society.

I believe it is desirable to flesh out the otherwise bland and cursory treatment of the facts by the majority opinion. On August 2, 1976, at 7:15 p. m. an undercover police officer allegedly purchased a quantity of marijuana from one Vicki Laird. That marijuana had been carried in a black bag and the purchase was made with marked money. Immediately after the sale, Laird joined defendant-respondent Rauch and others in a vehicle and returned to Rauch's residence. During that trip the vehicle was kept under surveillance. Rauch was observed carrying that black bag into his residence, which was thereafter kept under surveillance from approximately 6:45 p. m. until 7:30 p. m. During that time, a large number of officers in law enforcement vehicles maintained a communications network and a number of people were observed entering and departing the Rauch residence. During that time it was believed that seven or eight drug transactions took place and a number of persons leaving the residence were believed by the officers to be carrying controlled substances. Two of those persons left the residence and circled the neighborhood in a vehicle for a period of eight or nine minutes and it was believed that they observed the law enforcement personnel and vehicles engaged in the surveillance. Thereafter they returned to the Rauch residence. The surveillance, the communications network and the law enforcement actions were described by the trial judge as "excellent police work." The officer in charge of the law enforcement operation issued orders to detain and arrest those persons leaving the house and many were detained and arrested, although two or three escaped.

Officers participating in the operation testified that they believed those persons leaving the house, both those who escaped and those who were apprehended, possessed controlled substances. They also testified that on the basis of information received from a reliable informant the officers believed there was in excess of eight pounds of marijuana in the house, together with an undetermined amount of cocaine and the marked "buy" money. They testified that in their opinion there was a substantial risk of destruction of that evidence. The trial court, in its memorandum decision, found:

In this case at the time of the questioned entry into the house, through excellent police work the officers had developed *probable cause* to arrest the defendants and to believe that controlled substances were in the house. This was done through a controlled buy, following suspects to the house and continued surveillance thereafter. In addition the officers had initiated steps to obtain a search warrant, which was obtained after the questioned entry and which I find to have been validly issued. The evidence further demonstrated that at the time of the entry, *exigent circumstances* existed

which gave *probable cause* for believing that entry was needed to secure the house and monitor the residents before the search warrant arrived to prevent removal of contraband from the house. (Citations omitted.)

One officer involved in the raid testified that he was located two blocks distant from the Rauch residence. From that point he testified that he could hear the activities taking place in front of the Rauch residence. Police vehicles at high speed were arriving on the scene and sliding to a stop in front of the house to block the exit of vehicles. Shouting of orders to those persons arrested and other commotion could be heard at a distance of two blocks. It was testified that the officers feared that the individuals in the house may have possessed weapons and thus it would be to the detriment of the officers involved to enter the residence in other than hasty fashion. The officers arriving on the scene did so with drawn weapons.

The learned trial judge held that the above facts demonstrated the existence of "exigent circumstances" which justified the entry into the residence and the arrest of the individuals therein without the necessity of a warrant. The majority opinion today does not overturn those rulings of the trial judge. Hence, the constitutional protections afforded against warrantless arrests and search and seizure are not at issue here. Rather obviously, the trial judge felt that the warrantless entry and subsequent arrests were not "unreasonable" in a constitutional dimension. Hence, in my opinion, the discussions of the majority relating to constitutional protections and the authorities cited therein, both state and federal, are irrelevant to the case at hand and constitute dicta.

Following the arrest of those persons who had left the Rauch residence, the officer in charge of the operation testified that he immediately entered the house. No force or violence accompanied his entry. However, it is clear that he did not knock, ring a doorbell, or otherwise indicate his presence. Neither did he identify himself or state the purpose for requesting admittance into the house prior to his actual entry. Immediately after entry he identified himself as a state narcotics agent and stated he had probable cause to believe that controlled substances were in the house. Rauch and nine other persons were in the house at that time and were immediately placed under arrest. In plain view was the previously observed black bag, which was on the floor, opened, and which contained in plain view "one or two kilos, bricks, of what appeared to be marijuana." It is uncontroverted that no search of the house as such took place at that time. A search warrant arrived approximately one and one-half hours later and thereafter a search of the premises took place.

The narrow and only question presented in this case is whether Idaho's "knock and announce" statutes, I.C. §§ 19–611, 19–4409, require the suppression of the evidence when, under the uncontroverted facts and circumstances presented here, the officers failed to knock or otherwise indicate their presence at the door and identify themselves and state the purpose of their demand for admittance.

The trial judge held that "the time involved in compliance with the knock and announce statutes is a few minutes at most." He held that the beliefs of the officers regarding the possible destruction of evidence or their fears for their own safety "which would preclude taking the few minutes required to comply with the knock and announce statute had to be based on sheer speculation." I find it difficult, indeed impossible, to find that the then existent facts constituted "exigent circumstances" which justified the warrantless entry and the warrantless arrests otherwise prohibited by both the state and federal constitutions, but did not constitute "exigent circumstances" excusing non-compliance with statutory requirements.

Here the officers "through excellent police work" had ascertained that the occupants of the Rauch residence were dealing in narcotics and indeed that the residence was probably the center of a large scale

illegal narcotic activity. The officers testified that their experience in police work led them to believe that the "buy" money and other evidence would be destroyed if there was any delay in entering the Rauch residence. The officers further testified that all of the commotion and activity in front of the Rauch residence was probably being observed by anyone inside the residence. Rauch himself testified that prior to the entry of the officers he observed the arrest at gunpoint of two persons who had just exited the Rauch residence.

In my judgment, the ruling of the trial judge that the action of the officers was based on "sheer speculation" was erroneous and constituted the substitution of his judgment for those of the officers. As was said by the United States Supreme Court in an almost identical case, "[w]ithout the benefit of hindsight and ordinarily on the spur of the moment, the officer must decide these questions in the first instance." *Ker v. California,* 374 U.S. 23, 40, 83 S.Ct. 1623, 1633, 10 L.Ed.2d 726 (1963), quoting from *People v. Maddox,* 46 Cal.2d 301, 294 P.2d 6 (1956). I would hold that as exigent circumstances existed which validated the warrantless entry and warrantless arrest, so those same exigent circumstances and the reasonable beliefs of the police officers based on their experience in conducting drug raids and their knowledge of the facts and circumstances constituted exigent circumstances which validated their entry of the residence without compliance with the knock and announce statutes.

As above noted, the United States Supreme Court in *Ker* had for consideration circumstances remarkably similar to those presented in the case at bar. There the Court noted the narrow question presented as being in the context of a violation of California's knock and announce statute. In *Ker,* the Court distinguished between the constitutional guarantees against unreasonable searches and seizures and arrests without the benefit of a warrant and the exceptions thereto as contrasted with the alleged violation of either a federal or a state statute requiring a knock and announce prior to entry. The Court stated, "nor has the

Court rejected the proposition that noncompliance may be reasonable in exigent circumstances subsequent to *Miller.* In *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), the Court held that federal officers had not complied with § 3109 in executing an arrest. There the Court noted that in *Miller* it had reserved the question of an exception in exigent circumstances and stated that '[h]ere, as in *Miller,* the Government claims no extraordinary circumstances—such as the imminent destruction of vital evidence, or the need to rescue a victim in peril—. . . which excused the officer's failure truthfully to state his mission before he broke in.' "

In *Ker,* the U. S. Supreme Court cited with approval the decision of the California court in *People v. Maddox,* 46 Cal.2d 301, 294 P.2d 6 (1956), and quoted extensively from the opinion of Justice Traynor. Justice Traynor, in *Maddox,* stated:

It must be borne in mind that the primary purpose of the constitutional guarantees is to prevent unreasonable invasions of the security of the people in their persons, houses, papers, and effects, and when an officer has reasonable cause to enter a dwelling to make an arrest and as an incident to that arrest is authorized to make a reasonable search, his entry and his search are not unreasonable. Suspects have no constitutional right to destroy or dispose of evidence, and no basic constitutional guarantees are violated because an officer succeeds in getting to a place where he is entitled to be more quickly than he would, had he complied with section 844. Moreover, since the demand and explanation requirements of section 844 are a codification of the common law, they may reasonably be interpreted as limited by the common law rules that compliance is not required if the officer's peril would have been increased or the arrest frustrated had he demanded entrance and stated his purpose. [Citations omitted.] Without the benefit of hindsight and ordinarily on the spur of the moment, the officer must decide these questions in the first in-

stance. \* \* \* We conclude therefore that when there is reasonable cause to make an arrest and search and the facts known to him before his entry are not inconsistent with a good faith belief on the part of the officer that compliance with section 844 is excused, his failure to comply with the formal requirements of that section does not justify the exclusion of the evidence he obtains.

*Id.,* 294 P.2d at 9.

*See also State v. Wilson,* 9 Wash.App. 909, 515 P.2d 832 (1973), *State v. Vance,* 7 Or.App. 566, 492 P.2d 493 (1972).

I see no reason and, in my judgment, no valid rationale is furnished in the majority opinion to require the operation of the exclusionary rule to evidence obtained under the instant circumstances. As stated in *Maddox,* "in this proceeding we are not concerned with whether or not the officer's failure to do so would have justified defendant in using force to protect his person or property, or whether or not a jury in a trespass action might conclude that reasonable cause for the officer's failure to comply with the demand that explanation requirement did not exist. Moreover, since the officer's right to invade defendant's privacy clearly appears, there is no compelling need for strict compliance with the requirements of section 844 [knock and announce] to protect basic constitutional guarantees."

The exclusionary rule requiring the quashing of evidence procured in violation of constitutional guarantees relating to arrests or search and seizure is based on the alleged need to discipline and reform the actions of law enforcement personnel. The confusion and controversy arising from such exclusionary rule continues to rage and I doubt that such has as yet been finally resolved. Nevertheless, even as to constitutional guarantees, there have been careful exceptions carved out of the rule relating to exigent circumstances and probable cause to validate otherwise non-compliance with the literal constitutional language. I find no valid basis for failing to carve like exceptions relating to exigent circumstances and probable cause in situations involving actions not in compliance with the literal language of our knock and announce statutes. In my opinion, there is substantial and uncontroverted evidence in the record indicating the existence of exigent circumstances excusing the otherwise non-conformance of the officers here with our knock and announce statutes. Conversely, I find no evidence substantiating the trial judge's ruling that the officer's action here was based on sheer speculation and, therefore, would reverse his order suppressing the evidence.

McFADDEN, J., concurs.