STATE, PLAINTIFF, *v.* VUIN, DEFENDANT.

Common Pleas Court, Summit County.

No. 30694.

194

LOMBARDI, J. This matter came before the Court on the Motion of the Defendant, Walter Vuin, for an order, more fully set out below, to suppress and/or to return to him, certain evidence which he claims was seized by an illegal and unconstitutional search and seizure.

The facts disclosed by the hearing on the Motion are undisputed. The City of Akron Police and the Summit County Sheriff's Deputies acted under an alleged search warrant, the command portion of which was not signed by any Judge or Magistrate. These officers planned a raid on the private home of the Defendant, which was owned and occupied solely by the Defendant and his wife. The law enforcement officers, acting in concert and by prearranged plan, on September 12, 1961, arrived at the home of the Defendant in unmarked cars, and— with the possible exception of one uniformed man in the group— in plain clothes.

As the officers approached the home of the Defendant, the front door of the house was slammed shut. Without identifying themselves, or giving notice of their intention to search, the officers forcibly and simultaneously broke in three or four doors of the home, entered the same, searched the premises and the Defendant's car in the driveway, seized certain articles, and thereafter arrested the Defendant.

The articles seized by the officers, and the evidence to whose suppression and/or return the Motion is directed, are described in the Sheriff's return as:

1. One box policy numbers,
2. Three boxes of assorted dice,
3. One R. C. Allen 8 key adding machine.

Before plea, the Defendant filed his timely Motion on the 27th day of October, 1961, seeking the following:

1. Quashing, vacating, setting aside, and declaring for naught the alleged search warrant;

2. To suppress and return to the Defendant the evidence, finger prints and photographs illegally obtained;

3. Quashing, setting aside, vacating and suppressing the illegally obtained indictment and the illegal arrest of the Defendant;

4. Suppressing all conversations had and the observations made by the law enforcement officers during and after the illegal search, illegal seizure and illegal arrest of the Defendant.

The Court is fully aware of the consequences involved in the case at bar. On one hand it involves the individual's constitutional rights and human dignity, and on the other, law enforcement officers' effective prosecution of their duties.

Private residences in Ohio are, and always have been, protected against unconstitutional, illegal and unreasonable searches and seizures. See: Fourth Amendment of the Constitution of the United States: *Weeks* v. *United States*, 232 U. S., 383; Section 14, Article 1, of the Ohio State Constitution; Sections 2933.24, 2933.25 (Amended), and 2935.12 (Amended), Revised Code.

While this substantive law has remained unchanged, there has been procedural changes in Ohio as to whether or not evidence seized by unconstitutional or illegal searches may be used in the trial of the accused or should be suppressed. This rule that provides that no evidence illegally or unconstitutionally seized can be used in the trial of the accused is called the "Exclusionary Rule."

The Ohio Supreme Court in Syllabus 5 of *Nicholas* v. *City of Cleveland*, 125 Ohio St., 474, 182 N. E., 26, adopted the "Exclusionary Rule" and this rule was in full force and effect until *State* v. *Lindway*, 131 Ohio St., 166, overruled Syllabus 5 of the *Nicholas case*. The "Exclusionary Rule" then passed into disuse and became academic.

The case of *Dollree Mapp* v. *State*, 367 U. S., 643, decided

in the United States Supreme Court, in reversing *State* v. *Lindway, supra,* held:

"Syllabus 2: All evidence obtained by searches and seizures in violation of the constitution is constitutionally inadmissible in a State Court."

The *Mapp case,* in overruling *Lindway,* reestablished Syllabus 5 of the *Nicholas case* and it, along with *Mapp,* is the applicable law today.

It follows that once again the Ohio Judiciary must exclude evidence seized in violation of the Federal Constitution, the State Constitution and the Ohio Statutes thereto pertaining.

As stated above, the constitutional, statutory and legal provisions prescribing the mode and method of search of private homes, remained intact even during the *Lindway* era.

It is, and always has been, the general rule that a home cannot be searched without a valid search warrant, legally served. See: *Nicholas* v. *City of Cleveland, supra*; *Hobson* v. *U. S.,* 226 F. (2d), 890 (1950); *Johnson* v. *U. S.,* 333 U. S., 10; *Papani* v. *U. S.,* 84 F. (2d), 160; *Jones* v. *U. S.,* 357 U. S., 493 (1958); *U. S.* v. *Sully,* 56 F. Supp., 942; *State* v. *George,* 231 Pac., 683; 47 American Jurisprudence "Search and Seizure," Section 52 at page 531.

As cases developed, certain exceptions to this rule (that searches of homes can be conducted only under a valid search warrant, legally served) have emerged. However, the facts in the case before us are such that we are not concerned with these exceptions because they deal with searches incident to legal arrest; searches with consent; searches involving moving vehicles; searches of open fields; searches when officers are legally or rightfully on the premises; and with other exceptional areas which are not present in the factual situation before us.

The Court concludes, therefore, that a legal and constitutional search of a home, under the facts presented in this case, requires a valid search warrant which is legally served by the officers.

The specific legal issues presented in this case are:

A. Did the officers in the instant case search the home pursuant to a valid search warrant; and,

B. If the search warrant was valid, was the service thereof in accordance with the legal requirements of the law?

The Court turns to the first of these issues.

An affidavit for search warrant was duly executed and affirmed by an officer before one of the Judges of this Court. The officer then presented to the Court a printed search warrant form which had on its face a copy of said affidavit in accordance with the provisions of Section 2933.25, Revised Code.

Although the Statute provides only that a copy of the affidavit be incorporated in the search warrant, in the instant case the copy on the search warrant did not include the name of either the signing officer or the Judge who took the affirming officers' signature. So that on presentation of the search warrant to the Judge, the officer again signed the affidavit for search warrant copy on the face of the search warrant and the Judge again took the officer's affirmation thereon.

However, the command or order of the Judge to the officers to execute the search warrant, which was on the back of the search warrant form, was not signed by a Judge or Magistrate as provided by the Statute.

This then, is the search warrant under which the officers attempted to act.

Search warrants are creatures of statute and accordingly, the form and the content of the search warrant, and the manner in which the warrant is served are specific mandates of the State of Ohio. See Sections 2933.24, 2935.12 (Amended), and 2933.25 (Amended), Revised Code. Strict construction of the statutes providing for the issuance of search warrants has always been the rule in Ohio: *Columbus* v. *Buehler*, 23 O. N. P. (N. S.), 589; *Nicholas* v. *Cleveland, supra; U. S.* v. *Borkowski* (D. C., S. D., Ohio, W. Va.), 268 F., 408; 48 Ohio Jurisprudence (2d), Section 19, "Searches and Seizures."

Fundamentally, the search warrant is an extraordinary order of a Court. Since orders, journals, commands, judgments and decrees of our Courts of Record have the power to deprive people of property, of legal rights, and of their freedom, the Courts have always spoken through their signed entries and recorded journals. This is a standard that is jealously guarded by the Court to protect the populace from deprivations occurring by guess, implication or construction. See: *Schenley* v. *Kauth,* 160 Ohio St., 109, 113 N. E. (2d), 625; *Brown* v. *Wells Construction Co.,* 143 Ohio St., 580, 56 N. E. (2d), 451; *State* v.

*Day*, 136 Ohio St., 477, 26 N. E. (2d), 1014; *Will* v. *McCoy*, 135 Ohio St., 241, 20 N. E. (2d), 371.

The Court finds, therefore, that the alleged search warrant, since it was not signed by a Judge, never issued and was a void warrant. It was a nullity under which no action could be authorized or taken under the laws of Ohio.

The Ohio State Supreme Court in *Nicholas* v. *Cleveland, supra*, at page 482, states:

"The Courts, with substantial unanimity, hold that a search made under an illegal or void warrant is tantamount to a search made without a warrant."

*Kovacs* v. *State*, 24 O. N. P. (N. S.), 1, on page 14, states:

"It is well for us to keep in mind that an illegal search warrant is void and is no search warrant at all."

In *United States* v. *Pollack*, 64 F. Supp., 54, the Court states in Syllabus 6:

"Worthless search warrant left officers in position of trespassing on the Defendant's guaranteed rights under the Fourth Amendment."

In the absence of a valid search warrant, the search of the home of the Defendant was contrary to the constitutional and statutory provisions and any and all evidence seized thereunder cannot be used against him and must be suppressed and returned to the Defendant.

As to the second issue, the Court finds that even if there had been a valid search warrant, the seizure would still be illegal and unconstitutional because of the manner in which the alleged search warrant was served.

As we stated above, the statutes are specific and must be strictly followed. Section 2935.12 (Amended), Revised Code, states: \

"When . . . executing . . . a search warrant, the officer . . . may break down an outer or inner door or window of a dwelling house or other buildings, if, after notice of his intention, he makes such . . . search, he is refused admittance . . ."

This statute is mandatory and the cases pertaining thereto clearly show that officers cannot forcibly break into a home unless they first announce their intention to make a search or arrest and they are thereafter refused admittance. See: *Miller* v. *U. S.*, 357 U. S., 301 (1958); *Woods* v. *U. S.*, 240 F. (2d), 37;

certiorari denied in *Curtis* v. *U. S.*, 354 U. S., 926; *Jones* v. *U. S.*, 262 F. (2d), 234 (1959); *U. S.* v. *Price*, 149 F. Supp., 707 (1957). The facts are clear that there was no refusal of admittance since no announcement of their intention to search was made by the police officers. The Defendant (or his wife) had every right to shut the front door of his home, before being informed of the identity and purpose of the approaching men, and this action, cannot be construed as constituting a refusal of admittance. The law enforcement officers at that point, and without a valid search warrant, occupied the status of trespassing on the Defendant's constitutional guarantee. See: *U. S.* v. *Pollack, supra.*

Thus, assuming the police officers had a valid search warrant, the manner in which they attempted to serve it rendered the following search and seizure as being unreasonable and unconstitutional and the evidence seized must be suppressed and returned to the Defendant.

Fatal defects in the form of a search warrant or the manner of its service can never be remedied. As stated in *U. S.* v. *Slusser* (D. C.), 270 F., 818, loc. cit., 819:

"An unlawful search cannot be justified by what is found. A search that is unlawful when it begins is not made lawful when it ends by the discovery and seizure . . . It was against such prying, on the chance of discovery, that the constitutional amendment was intended to protect the people."

See also: *Bock* v. *Cincinnati*, 43 Ohio App., 257, 183 N. E., 119; *Cincinnati* v. *Fay*, 27 O. N. P. (N. S.), 520; *U. S.* v. *Rembert* (D. C.), 284 F., 996.

Further, the law is clear that there is a presumption that a police officer, deriving his authority from the sovereignty of the State, in the execution of his duties, executes them legally. See: *Spencer* v. *Heise*, 158 N. E. (2d), 570. However, this legal presumption is dispositive of an issue solely where neither party introduces evidence regarding the fact to be presumed. If no evidence had been presented upon the issue of legal execution, the State would have had the benefit of the presumption. The moment the Defendant produced evidence that bore upon the issue, the presumption disappeared and this issue would be before the Court on the evidence and facts adduced. It became, at that time, incumbent upon the State to present some evidence

200

on this point. Had the State done so, the Defendant would have been placed on the burden of carrying the preponderance. No such burden existed, since only the Defendant presented any evidence at all. See: *Ayers* v. *Woodward*, 166 Ohio St., 138, 140 N. E. (2d), 401.

The fundamental issue raised by this case is of grave concern to the Judiciary. On the one hand, we have at stake those safeguards of home and person which are founded in the Constitutions of the United States and of the State of Ohio. These safeguards do not state that no home should be searched. They merely prohibit only the unreasonable and illegal violation of the privacy of a home. The statutes in Ohio spell out specifically the methods by which searches can be reasonably and legally conducted.

On the other hand, there is a reluctance on the part of some Courts to hold strictly to the statutory mandates that give life and substance to our constitutional guarantees because of the fear that some guilty person might go free, or the fear that strict observance of these procedures might hamper the law enforcement officers.

It appears to the Court that to the extent that we permit searches of homes without full compliance with the statutory provisions, we are whittling away at the foundations of the Constitutional system in the United States. I say that if we permit the home of a criminal or a foul person to be invaded without a valid warrant, we are giving our blessing to the same invasion of the homes of law abiding citizens.

The issue of Judicial integrity versus effective police work was considered in *Mapp* v. *Ohio, supra,* and *Elkins* v. *United States,* 364 U. S., 206. This is what the Supreme Court said about that contention, in *Mapp* v. *Ohio, supra,* at page 391:

"There are those who say . . . that under our Constitutional Exclusionary Doctrine 'the criminal is to go free because the constable has blundered.' *People* v. *DeFore,* 242, N. Y. at page 21, 150 N. E. at page 587. In some cases this will undoubtedly be the result. But, as was said in *Elkins,* 'there is another consideration—the imperative of judicial integrity.' 364 U. S. at page 222, 80 S. Ct., at page 1447. The criminal goes free, if he must, but it is the law that sets him free. Nothing can destroy a government more quickly than its failure to ob-

serve its own laws, or worse, its disregard of the charter of its own existence. As Mr. Justice Brandeis, dissenting said, in *Olmstead* v. *United States* (1928), 277 U. S., 438, 485, 48 S. Ct., 564, 572 L. Ed., 944: 'Our government is the potent, the omipresent teacher. For good or for ill, it teaches the whole people by its example . . . If the government becomes a law breaker, it breeds contempt for law; it invites every man to become a law unto himself; it invites anarchy.' *Elkins* v. *U. S.*, supra at page 364. The Court noted that:

"The ignoble shortcut to conviction left open to the State tends to destroy the entire system of constitutional restraints on which the liberties of the people rests. Having once recognized that the right to privacy embodied in the Fourth Amendment is enforcible against the states, and that the right to be secured against rude invasions of privacy by state officers is, therefore, constitutional in origin, we can no longer permit that right to remain an empty promise. Because it is enforcible in the same manner and to like effect as other basic rights secured by the Due Process Clause, we can no longer permit it to be revocable at the whim of any police officer who, in the name of law enforcement itself, chooses to suspend its enjoyment. Our decision, founded on reason and truth, gives to the individual no more than that which the Constitution guarantees him, to the police officer no less than that to which honest law enforcement is entitled, and to the Courts, the judicial integrity so necessary in the administration of justice."

The Court, therefore, will sustain the Motion of the Defendant as to the first branch thereof; as to the second branch thereof, the Court finds that the evidence as shown by the return of the officer on the purported search warrant be suppressed and returned to the Defendant.

In disposing of the issues above, the Court does not feel it necessary to pass upon any of the other questions raised in Defendant's Motion.

Exceptions to both parties. Counsel to prepare proper journal entry.