Chief Judge Fuld
(dissenting). The People have consistently sought to justify the entry of the police into the defendant’s room and their seizure of contraband on the ground—to cull from the district attorney’s brief — that “ the officer had reasonable grounds to believe that the defendant was guilty of disorderly conduct ”. This may well be so but, in that event, the police were required by section 178 of the Code of Criminal Procedure to give “notice of [their] office and purpose” before entering the room. (See, also, Code Grim. Pro., § 799.) No such announcement was made. It follows that the arrest was unlawful and that the evidence seized should have been suppressed. (See Miller v. United States, 357 U. S. 301, 314; People v. Arellano, 239 Cal. App. 2d 389; Benefield v. State, 160 So. 2d 706 [Fla.]; State v. Vuin, 89 Ohio L. Abs. 193; see, also, Blakey, The Buie of Announcement and Unlawful Entry, 112 U. of Pa. L. Bev. 499, 557-558. [1]
*396 Indeed, the court recognizes that section 178, if applicable, would have required the police to announce their authority and purpose and that their failure to do so would have rendered the- arrest and the seizure illegal. But the majority is of the opinion that the .statute has nothing to do with the case because, it is asserted, the police entered the room not to effect an arrest but for some “investigatory” purpose.[2] If this were so, then, the question would be not whether the police were required to give notice of their office and purpose but, instead, whether they were authorized to enter the premises at all. It is my opinion that, if the officers did not have probable cause to make an arrest and they did not enter the room to do so, there was a flagrant violation of the Fourth Amendment of the Federal Constitution.
In the words of that amendment, all persons have a right to “ be secure in their * * * houses ” (see, also, N. Y. Const., art. I, § 12), and that has been interpreted to mean that law enforcement officers may not enter a person’s home and secure evidence for a criminal prosecution unless authorized to do so “ pursuant to a legal search warrant, by consent, or incident to a lawful arrest.” (People v. Loria, 10 N Y 2d 368, 373; see People v. Stokes, 15 N Y 2d 534; People v. Yarmosh, 11 N Y 2d 397; People v. O’Neill, 11 N Y 2d 148.) In the present case, there was no search warrant, nor, according to the majority, were the police seeking to arrest the defendant upon “ probable cause ” for believing that he had committed a crime. Therefore, if the entry were authorized, it must have been done by consent, either express or implied.
The Supreme Court has clearly indicated that such consent must be given by the “ occupant ” of the place to be searched. (Lewis v. United States, 385 U. S. 206, 211; see Stoner v. California, 376 U. S. 483, 489; Chapman v. United States, 365 U. S. 610, 617; Jones v. United States, 362 U. S. 257; McDonald v. United States, 335 U. S. 451; Johnson v. United States, 333 U. S. 10.) Most assuredly, the defendant did not invite the police to come into his room. Nor could the night manager of the rooming house, any more than the night clerk of a hotel, consent to entry and search of the defendant’s room. (See *397 Stoner v. California, 376 U. S. 483, 489-490, supra.) Although the night manager may be empowered to enter a room should there be “ an outbreak of fire, a leakage of water or gas, or any other emergency * * * in [the] room” (de Wolf v. Ford, 193 N. Y. 397, 403), the record permits no inference here that the manager had that in mind when he allowed the police to enter the defendant’s room. The manager was concerned about “noise”, which, he told the police, “had been going on for several evenings ”, not fire, a utility break or some other emergency. Moreover, the manager did not unlock the door on his own authority but at the direction of the police. Finally, the People do not claim — and, indeed, they could not—that any reasonable basis existed for believing that such an emergency existed, particularly in view of the fact that the ‘ ‘ noise ” stopped after the knock on the defendant’s door and a voice answered, “ Wait a minute. I’m not dressed.” Absent a specific intent, based on some reasonable ground, to go into a room for the sole purpose of coping with a suspected emergency, the manager’s power to enter the premises for that limited purpose may not be used to validate this unauthorized entry into the defendant’s room. (See Stoner v. California, 376 U. S. 483, 489, supra; Chapman v. United States, 365 U. S. 610, supra; United States v. Jeffers, 342 U. S. 48; Lustig v. United States, 338 U. S. 74.)
It is true, as Judge Cakdozo said many years ago, that “ Danger invites rescue ”, that the “ cry of distress is the summons to relief ”. (Wagner v. International Ry. Co., 232 N. Y. 176, 180.) It is both realistic and proper to regard policemen, who are duty bound to respond to such a call, as having received the implied consent of the occupant to enter the premises in order to render aid. If, in the course of such humanitarian work, undertaken for good reason and in good faith, evidence of crime should be uncovered, it would undoubtedly be admissible in a subsequent prosecution. (See People v. Roberts, 47 Cal. 2d 374; Davis v. State, 236 Md. 389, cert. den. 380 U. S. 966; cf. People v. Capra, 17 N Y 2d 670.) However, in the case before us, the record does not disclose any basis for a claim—and the People have never made any such claim—that the police entered the defendant’s room in the belief that he was ill or otherwise in need of assistance. On the contrary, the fact that the defendant responded *398 to the knock on the door with his “ Wait a minute. I’m not dressed ” thoroughly negates the idea that he was in distress.[3]
I would sum up my views in this way. If the police had probable cause to arrest the defendant for disorderly conduct, their entry into the defendant’s room was illegal because it was not preceded by “notice of [their] office and purpose (Code Crim. Pro., § 178; see Miller v. United States, 357 U. S. 301, supra.) If, on the other hand, the police did not go into the defendant’s room for the purpose of arresting him, their entry was unauthorized and contravened the Fourth Amendment. (See Stoner v. California, 376 U. S. 483, supra.) In either ease, whether there was a violation of a statutory requirement or of a constitutional right, the evidence seized pursuant to such unlawful behavior should have been suppressed and the judgment of conviction reversed.
Judges Burke, Scileppi and Bergan concur with Judge Breitel; Chief Judge Fuld dissents and votes to reverse in an opinion in which Judges Van Voorhis and Keating concur.
Judgment affirmed.

. Although there may, at times, be “ exigent circumstances ” requiring unannounced entry by law enforcement officials — e.g., to prevent destruction of evidence (see Code Crim. Pro., § 799; People v. DeLago, 16 N Y 2d 289; Ker v. California,, 374 U. S. 23, 39-40) —nothing of the sort was present in the ease before us. (See Wong Sun v. United States, 371 U. S. 471, 483, 484; Miller v. United, States, 357 U. S. 301, 309, supra.) If the police, prior to their entry, had any grounds at all for believing that a misdemeanor was being committed m their presence, thus authorizing them to arrest the offender without a warrant (Code Crim. Pro., § 177, subd. 1), it was for the crime of disorderly conduct.

. This view is not only at odds with the record but is, as already noted, contrary to the position stoutly maintained by the People.

. Whatever the statement by the judge at the suppression hearing—- quoted in the court’s opinion (p. 391) —may mean, it certainly may not be read as a finding that the police entered the defendant’s room for the purpose of aiding a person in distress.