**STATE of South Dakota, Plaintiff and Appellant,**

v.

**Gwendolyn STEINGRABER and Walter Kendal Myers, Defendants and Appellees.**

**13017.**

Supreme Court of South Dakota.

Argued May 23, 1980.

Decided Sept. 17, 1980.

Rehearing Denied Oct. 29, 1980.

Gary F. Colwill, Deputy State's Atty., Pierre, for plaintiff and appellant.

Douglas E. Kludt of Bergren & Duffy, Fort Pierre, for defendants and appellees.

WOLLMAN, Chief Justice.

This is an intermediate appeal from an order suppressing certain evidence seized pursuant to a search warrant. We reverse and remand.

Acting pursuant to an informant's tip regarding drug–related activity, a search warrant was obtained authorizing a search of a residence at 328 North Grand in Pierre. At approximately 7:30 on the evening of September 17, 1979, several law enforcement officers, led by Hughes County Deputy Sheriff Charles Vollmer, undertook to serve the warrant. The officers positioned themselves at various places around the house. Deputy Sheriff Vollmer and two other officers approached the front door of the residence.

The residence is a brick structure with an enclosed porch attached to the front. Entry to the porch is obtained through a screen door. Deputy Sheriff Vollmer opened the screen door without first knocking, whereupon he and the other two officers entered the porch and approached the front door to the living quarters. Finding this door open and observing two occupants in the living room, one in possession of a marijuana pipe and a tray of what appeared to be marijuana, Deputy Vollmer entered the living room, announcing his purpose to execute the search warrant almost simultaneously with his entry, although he could not recall whether the announcement was made before or after he stepped into the living room. Immediately after entering the living room and ordering the two occupants to be seated on the

couch, Deputy Vollmer handed a copy of the search warrant to defendant Myers, one of the occupants.

Defendant Myers' affidavit in support of the motion to suppress states that upon looking up after hearing the screen door open he saw Deputy Vollmer standing in the living room waving a piece of paper and what appeared to be his badge and stating "this is the police, stay where you are, you are under arrest."

SDCL 23A–35–8 states in part:

The officer executing a search warrant may break open any building, structure, or container or anything therein to execute the warrant if, after giving notice of his authority and purpose, he is refused admittance. . . .

As we stated in *State v. Kietzke*, 85 S.D. 502, 186 N.W.2d 551 (1971), this statute (then denominated as SDCL 23–15–14) is similar to 18 U.S.C.A. § 3109 and section 844 of the California Penal Code. As summarized by the Supreme Court of California in *Duke v. Superior Court of Los Angeles*, 1 Cal.3d 314, 82 Cal.Rptr. 348, 461 P.2d 628 (1969):

The purposes and policies underlying section 844 are four–fold: (1) the protection of the privacy of the individual in his home . . . (2) the protection of innocent persons who may also be present on the premises where an arrest is made . . . (3) the prevention of situations which are conducive to violent confrontations between the occupant and individuals who enter his home without proper notice . . . and (4) the protection of police who might be injured by a startled and fearful householder.

82 Cal.Rptr. at 352–53, 461 P.2d at 632–33 (citations omitted). See also *People v. Peterson*, 9 Cal.3d 717, 108 Cal.Rptr. 835, 511 P.2d 1187 (1973), wherein the California Court pointed out that statutes requiring officers to announce their presence and purpose before demanding entry to execute a search warrant serve policies and purposes

similar to statutes such as section 844 of the California Penal Code. 108 Cal.Rptr. 835, 839, n. 7, 511 P.2d 1187, 1191, n. 7.*

■ We first consider the question whether it was incumbent upon the officers to comply with the requirements of SDCL 23A–35–8 before entering the enclosed porch through the screen door. The State argues that such compliance is not required if the officers comply or clearly intended to comply at the front door to the living area. *People v. Harvey*, 38 Mich.App. 39, 195 N.W.2d 773 (1972). We agree. From the picture painted by the record, the porch in question was more in the nature of a foyer or natural entranceway for the general public than a part of the house proper. Absent a clear showing that such a porch is an integral portion of the living area of a residence, the statute does not dictate compliance with the knock and announce requirement at the entrance to the porch.

There remains the question whether Deputy Vollmer's failure to knock at the open door to the living quarters and to announce his presence and purpose constituted such a substantial noncompliance with the provisions of SDCL 23A–35–8 as to render the fruits of the subsequent search inadmissible.

■ Assuming that the provisions of SDCL 23A–35–8 apply to entrances made through an open door, cf. *People v. Peterson*, supra, 108 Cal.Rptr. at 839, 511 P.2d at 1191, we hold that Deputy Vollmer's announcement of his intention to execute the search warrant made simultaneously, or nearly so, with his entry into the living room constituted substantial compliance with the statute. Entry through an open door in full view of the occupants of the room is far different from the surreptitious, unexpected type of entry that the statute is designed to prevent.

We analogize the facts in the present case with those in *People v. Peterson*, supra. There, the officers had committed a techni-

---

* The statute in question in the *Peterson* case (section 1531 of the California Penal Code) is   similar in many respects to SDCL 23A–35–8.

cal violation of section 1531 of the California Penal Code by opening an unlatched screen door before giving the notice of their authority and purpose required by that statute. In concluding that under the circumstances of the case there had been substantial compliance with section 1531 and with the purposes and policies set forth in *Duke v. Superior Court of Los Angeles*, supra, and *Greven v. Superior Court of County of Santa Clara*, 71 Cal.2d 287, 78 Cal.Rptr. 504, 455 P.2d 432 (1969), the court wrote:

> The question then is whether Officer Kalm by delaying his announcement until after he had opened the screen door frustrated or made nugatory any of the purposes and policies previously enumerated. We note that the interior of the residence and the occupants therein were visible to any member of the public who, like the officers, had proper reason to enter onto the premises and approach the visibly open doorway. Thus, no right of privacy was infringed as the opening of the screen door revealed nothing more than was already exposed to the officers' view and they did not physically intrude into the home until after the announcement.
>
> It is equally clear that no greater risk of violence to any person on the premises was created, as at all times after approaching and knocking the officers could clearly observe the occupants within the interior and take precautionary measures if necessary. Nor can it be argued successfully that there was a greater risk that the occupant might respond violently by reason of ignorance of the officers' identity and purpose, as the officers were immediately visible and announced their purpose to the occupants who were thus made aware of the situation and its demands. Assuredly the personal safety of the officers, as in the case of the occupants, was not subjected to any increased danger. . . .

108 Cal.Rptr. at 840, 511 P.2d at 1192 (footnote omitted).

We conclude that the same reasoning applies to the facts in the present case. Standing where he had a right to be, Deputy Vollmer was visible to the occupants within the room. Likewise, the occupants, together with the interior of the premises, were visible to Deputy Vollmer and his colleagues. Even if we accept defendant Myers' version of the sequence of the events, Deputy Vollmer's announcement of his authority and purpose was so nearly contemporaneous with his entry into the living quarters that it constituted substantial compliance with SDCL 23A–35–8 and the purposes and policies that statute was designed to serve. Accordingly, we hold that the evidence seized pursuant to the warrant should not have been ordered suppressed.

Defendants' contention that the search violated their constitutional rights to be free from unreasonable searches and seizures is without merit. Defendants do not challenge the validity of the search warrant itself, and it follows from our holding above that the search conducted pursuant to the warrant was not unreasonable.

The order appealed from is reversed and the case is remanded to the circuit court for further proceedings.

DUNN, MORGAN and FOSHEIM, JJ., concur.

HENDERSON, J., dissents.

HENDERSON, Justice (dissenting).

I would affirm the lower court's ruling to suppress the evidence and therefore dissent.

The decision of the lower court was succinct, sound, not clearly erroneous and follows below:

## FINDINGS OF FACT

### I.

On September 17, 1979, a group of law enforcement officers led by Hughes County Deputy Sheriff Charles Vollmer armed with a search warrant, made their way up to a residence at 328 North Grand in Pierre, South Dakota.

## II.

Deputy Vollmer led the way by opening a screen door on an enclosed porch of the dwelling *without knocking* and upon proceeding into the porch observed that the inner door to the living room was open and proceeded on into the living room *without knocking or announcing his authority until he was within the living room of the dwelling.* (Emphasis supplied.)

Upon the foregoing Findings of Fact, the court makes and enters the following:

## CONCLUSIONS OF LAW

### I.

SDCL 23A–35–8 clearly places the burden on an officer executing a search warrant to announce his authority and purpose before entering a structure or portion of a structure.

### II.

The requirements of SDCL 23A–35–8 were not adhered to in the case at bar, and that therefore, defendant's motion to suppress evidence is granted.

The actions of the police officers at the time of the execution of the search warrant did not comply with the requirements of SDCL 23A–35–8, which provides:

The officer executing a search warrant may break open any building, structure, or container or anything therein to execute the warrant if, after giving notice of his authority and purpose, he is refused admittance. An officer executing a search warrant may break open any building, structure, or container or anything therein for the purpose of liberating a person who, having entered to aid him in the execution of a warrant, is detained therein, or when necessary for his own liberation.

In addition to the exceptions contained within SDCL 23A–35–8, that particular statute's requirements can be avoided by following the procedure set out in SDCL 23A–35–9, which provides:

If a committing magistrate who has been asked to issue a search warrant is satisfied that there is probable cause to believe that if notice was given prior to its execution, the property sought in the case may be easily and quickly destroyed or disposed of, or that danger to the life or limb of the officer or another may result, he may include in the warrant a direction that the officer executing it is not required to give the notice required by § 25A–35–8. In such case, the officer who executes the warrant may, without notice of his authority and purpose, enter any structure, portion of a structure or a vehicle, or anything therein, by whatever means, including breaking therein.

These statutes are commonly denominated in the law as the "knock and announce" rule. We must apply the facts of this case to the "knock and announce" rule to determine in our appellate review whether the trial court was clearly erroneous.

In reviewing the testimony of the police officers at the preliminary hearing together with the affidavits of the defendants, I am firmly convinced that the record conclusively shows that SDCL 23A–35–8 was not complied with when the officers executed the warrant. Further, there appears to be no evidence in the record which would justify or excuse their noncompliance. In reviewing the application for the search warrant, as well as the search warrant, there is no "knock and announce" request and authorization. The warrant simply did not authorize a "no–knock" entry. Thus, no stretch of legal fantasy can bring the officers within the purview of SDCL 23A–35–9.

Please bear in mind that the trial court found, as a fact, that the officers did not knock or announce at either the porch door or the inner door leading directly into the living room. Add this: counsel for the state, in his argument before this court, conceded that the officers did not knock nor announce at either door before entering. I therefore take exception to the facts recited in the majority opinion and would hold that this was an unlawful invasion into the privacy of a home.

The State's argument can be summed up as follows: the defendants forfeited their

expectation of privacy by leaving the inner door open and the defendants should have known that officers, or anyone else for that matter, would enter into an enclosed porch in order to gain access to the inner door. Indeed, counsel for the State argued in oral argument that the officers did not have to knock at either door. Counsel based his argument upon the premise that the officers could see criminal activity inside the home and this justified the officer's conduct in neither announcing or knocking. The facts do not bear this out. Under the State's construction, the statutes are meaningless. The State's position would completely negate legislative directives contained in the statutes. "Generally statutes authorizing and regulating searches and seizures and the issuance of search warrants are strictly construed against the state and liberally in favor of the individual." *State v. Cochrane*, 84 S.D. 527, 531, 173 N.W.2d 495, 497 (1970).

The State would have this court believe that this porch is a "storm porch" and that, therefore, it is not really a part of a structure, namely the defendants' home. From a review of the record, briefs, and findings of fact of the lower court, there can be no doubt that the porch is enclosed on all sides and is permanently attached to the house. The house is made of brick and defense counsel contends in his brief the porch is likewise made of brick. The State's brief does not refute this but the record is not clear. Brick or wood, the porch is an integral part of the house and represents an extension of the home. I refuse to accept that an enclosed porch is not a part of a home. The fact that the inner door was left open by the defendants suggests that they considered the porch a part of the home. The facts establish, through the testimony of Officer Vollmer, that observation into the house was obstructed by the porch. The defendants' castle began with the porch, not at the inner door, and the door at that porch was the primary barrier protecting the defendants' privacy to the outside world.

A number of state courts have held that an entry effected in violation of the "knock and announce" rule renders any following search and seizure unreasonable within the meaning of the Fourth Amendment to the United States Constitution. *People v. Rogers*, 59 Ill.App.3d 396, 16 Ill.Dec. 902, 375 N.E.2d 1009 (1978); *State v. Mendoza*, 104 Ariz. 395, 454 P.2d 140 (1969); *State v. Vuin*, 89 Ohio L.Abs. 193, 185 N.E.2d 506 (Ohio Com.Pl.1962); *Greven v. Superior Court of Santa Clara County*, 71 Cal.2d 287, 78 Cal.Rptr. 504, 455 P.2d 432 (1969). Any finding that the Fourth Amendment to the United States Constitution has been violated mandates application of the Exclusionary Rule. *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).

A recent case in the Supreme Court of Rhode Island, *State v. Slezak*, 115 R.I. 599, 350 A.2d 605 (1976) supports my dissenting view. In the Rhode Island case, the police officer had entered the back porch of the defendant's house and observed a screen door. Upon opening the screen door, the officer discovered that the inner door opened into the kitchen. As he crossed the threshold into the kitchen, the officer identified himself and gave the defendant a copy of the search warrant. As in this South Dakota case, the state contended that it would have been senseless to knock after the officer found the inner door open and was in plain view of the defendant. The Supreme Court of Rhode Island would not countenance such reasoning and held that there was no justification of the officer failing to comply with the "knock and announce" rule and the right of privacy had been unconstitutionally invaded. The facts in the Rhode Island case are strikingly similar to the case at bar. Marijuana was found in the Rhode Island home, just as it was found in the Pierre, South Dakota, home.

In *People v. Rogers*, supra, the house was surrounded; in this case, officers surrounded the house and startled an innocent mother of one of the defendants as they entered the back door, also without knocking; in *Rogers*, a search warrant was handed to the defendant and the police officers announced their purpose only *after entering the living room* (the same as in this case). The Su-

preme Court of Illinois reversed the conviction.

I can clearly distinguish the *Harvey* case in the State of Michigan, cited by the majority, from the case at bar. In *Harvey*, the officers knocked several times on the outer screen door of the porch before entering. *Harvey* involved a "semi–closed" porch. In this case, the findings of fact entered by the trial court established that the porch was *enclosed.*

By opening the screen door, without knocking and announcing, there can be no doubt under the case law of this state and nation, that the police officers accomplished a "breaking." In *State v. Vierck*, 23 S.D. 166, 120 N.W. 1098 (1909), this Court held that there was a "breaking" within the meaning of the burglary statute. We held that a "breaking" can consist of opening a door which is shut but is neither locked nor latched. It is undisputed that the screen door in the case at bar was shut.

The majority opinion cites *State v. Kietzke*, 85 S.D. 502, 186 N.W.2d 551 (1971). *Kietzke* is precedent for the principle that strict compliance with the "announce first" statute is not required when exigent circumstances are present. There were no exigent circumstances here: no danger; no weapons; no threats; no menace; no hurried activity to run, escape, hide, or secrete. Admittance was never refused. Also, at the time of the *Kietzke* decision, SDCL 23A–35–9, which allows a magistrate to issue a "no–knock" warrant under certain circumstances, had not been enacted at the time of the commission of the offense.

It appears to me that the enactment of SDCL 23A–35–9 indicates that the Legislature desired law enforcement officers to have even less discretion to execute search warrants. The enactment of this statute attaches greater importance to the "announce first" rule than it did at the time of the *Kietzke* decision.

In *Kietzke*, this Court recognized that our statute was similar to 18 U.S.C.A. § 3109, both being "no–knock" statutes. In *Sabbath v. United States*, 391 U.S. 585, 590, 88 S.Ct. 1755, 1758, 20 L.Ed.2d 828, 834 (1968), the United States Supreme Court stated:

An unannounced intrusion into a dwelling—what § 3109 basically proscribes—is no less an unannounced intrusion whether officers break down a door, force open a chain lock on a partially open door, open a locked door by use of a passkey, or, as here, open a closed but unlocked door. The protection afforded by, and the values inherent in, § 3109 must be "governed by something more than the fortuitous circumstance of an unlocked door." (Citations omitted.)

A Deputy Sheriff Barnes aided in this invasion of a Pierre home. Barnes testified that the first thing he could recall was a command to an occupant in the living room to sit down. Barnes testified that a juvenile and defendant Myers were *immediately handcuffed together* and that the occupants of the house were extremely confused about why the police officers were in the home.

I deplore this type of law enforcement and all that it stands for. There is no right so sacred to the American people as the right to be secure in their homes. Without that right, religiously guarded, we as a people are as subject to being the prey of state domestic intervention and terror as those fellow human beings who live in the Soviet bloc. As Patrick Henry once said: Forbid it, Almighty God!