688 P.2d 1213

STATE of Idaho, Plaintiff-Respondent,

v.

Ronald S. WALKER,
Defendant-Appellant.

No. 14102.

Court of Appeals of Idaho.

Sept. 27, 1984.

Ronald S. George, Pocatello, for defendant-appellant.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., Myrna A.I. Stahman, Deputy Atty. Gen., Boise, for plaintiff-respondent.

WALTERS, Chief Judge.

Ronald Walker was found guilty by a jury of possession of marijuana with intent to deliver, a felony. I.C. § 37–2732(a)(1)(B). Prior to trial, Walker had moved to suppress certain evidence seized pursuant to a search warrant. On appeal, he contends the district court erred in denying the suppression motion. We affirm.

Walker raises three issues. First, he contends the search warrant was issued without probable cause. Next, he asserts his fourth amendment rights were violated when the police secured his house and detained him therein while awaiting the issuance and arrival of the search warrant. Finally, he claims the officers violated Idaho's "knock and announce" statutes when they entered his home to secure the premises.

The following facts, leading to Walker's arrest and the seizure of the evidence, were undisputed at the hearing on Walker's motion to suppress. Believing that Walker possessed a quantity of marijuana, representatives of the Idaho Bureau of Narcotics used an undercover informant to contact Walker at his residence. The informant had been strip searched and provided with a body transmitter before meeting with Walker. At Walker's home the informant arranged for a subsequent sale by Walker of marijuana with the informant acting as an agent for a third party. The conversation between Walker and the informant was monitored, through the body transmitter, by a law enforcement officer stationed on surveillance outside Walker's house. While in the Walker residence, the informant observed several pounds of marijuana. Walker provided the informant with an amount of marijuana which was rolled into a cigarette. After the informant left Walker's residence, he was taken by the officers to the sheriff's office and was again strip searched. The marijuana cigarette was taken into custody and the substance in the cigarette was verified as being marijuana.

When the informant left Walker, he had told Walker that he would return in ten to fifteen minutes to make the agreed purchase. The officers realized it would take a longer period of time to obtain a search warrant. They became fearful that Walker would suspect something was amiss when the informant did not return as soon as agreed, and that Walker would perhaps dispose of the marijuana in his possession. The officers decided to enter Walker's home and secure the premises while awaiting the arrival of a search warrant.

The officers divided their forces. One officer left to obtain a search warrant from a magistrate while two other officers went to Walker's residence. When they arrived they knocked on Walker's door. Walker opened the door. One of the officers blocked the door with his foot to prevent its closing. He displayed his identification card and his badge and stated they were police officers. The other officer, a state patrolman, was in uniform. The officers then entered the residence without any invitation from Walker. Walker was informed that a search warrant was being obtained and that the officers were there to secure the premises pending arrival of the warrant.[1]

After entering the house, the officers did not attempt to search the premises nor did they seize any evidence or even question Walker about any criminal activity. They simply remained there with him, waiting for the warrant to arrive. About two hours later, another officer arrived with a search warrant. The officers then searched the house and, according to their

---

1. The evidence is undisputed that, at some point in time, the officers informed Walker of their purpose for entering his house. However, the evidence presented at the suppression hearing was conflicting as to whether the officers announced their purpose before they stepped through the doorway, as they were stepping through the doorway, or after they were inside the house. Although the district court found that the officers knocked, that the door was opened by Walker, and that the officers identified themselves, the court did not make a finding as to *when* the officers announced their purpose. The court simply held the evidence on that point was "in conflict".

"return" on the search warrant, found approximately four pounds of marijuana. Walker was then arrested. The marijuana, later used as evidence at Walker's trial, was the subject of Walker's motion to suppress.

While Walker's appeal has been pending, recent decisions of the United States Supreme Court and the Idaho Supreme Court have been rendered which relate to the first two issues raised by Walker on appeal. He has argued that the search warrant was issued based on hearsay information provided by the law enforcement officers to the magistrate who issued the warrant. He further contends that the record does not establish the reliability or credibility of the informant who was used by the police to arrange for the sale of the marijuana. In sum, Walker relies on what is commonly known as the Aguilar-Spinelli test,[2] to contend there was not probable cause established for the issuance of the warrant.

■ However, the Aguilar-Spinelli approach has been abandoned by the courts in favor of a more flexible "totality of the circumstances" analysis. *See Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) *and State v. Lang*, 105 Idaho 683, 672 P.2d 561 (1983). Our narrative of the facts preceding the entry by the officers into Walker's house parallels the information contained in the affidavit that was submitted to the magistrate for the issuance of the search warrant. Reviewing that information, we hold the magistrate had a substantial basis, under the totality of the circumstances, for finding probable cause to issue the warrant. *Lang, supra.*

■ Walker next contends that his rights were violated when the officers secured his house awaiting the arrival of a search warrant. This issue also has been addressed recently by the United States Supreme Court. In *Segura v. United States*, —— U.S. ——, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984), the Court reviewed a seizure of evidence under a search warrant where the searched premises had been secured from the inside by law enforcement agents for approximately nineteen hours before the search warrant arrived. Addressing the seizure of evidence under the warrant, the Court held

> that the evidence discovered during the subsequent search of the apartment the following day pursuant to the valid search warrant issued wholly on information known to the officers before the entry into the apartment need not have been suppressed as "fruit" of the illegal entry because the warrant and the information on which it was based were unrelated to the entry and therefore constituted an independent source for the evidence under *Silverthorne Lumber Co. v. United States*, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920).

*Id.* at ——, 104 S.Ct. at 3383. As in *Segura*, here there was an independent source for the seizure of the marijuana in Walker's house. The evidence was discovered during a search pursuant to a valid warrant. The information on which the warrant was issued came from sources wholly independent from any information gained by the police upon their entry into Walker's home. For the purpose of this case the well established "independent source" doctrine applies and we need not and do not rely on *Segura* to establish authoritatively any broader exception to the fourth amendment exclusionary rule.[3] We hold the court below did not err in refusing to suppress the evidence upon the basis that the evidence had been seized under the war-

---

**2.** *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).

**3.** There may be some question concerning the effect of the decision in *Segura* inasmuch as the opinion, written by the Chief Justice, was segre-

gated into six parts and all but part IV of the opinion were joined in by four other Justices. However, the portion of that opinion which we quote herein is found in part I, is supported by analytical discussion found in parts III and V, and therefore represents the view of five of the nine members of that Court.

rant which arrived after Walker's residence had been secured.

Finally, Walker asserts that the seizure of evidence from his home should have been suppressed because the officers violated Idaho's knock-and-announce statutes.[4] He relies on *State v. Rauch*, 99 Idaho 586, 586 P.2d 671 (1978). In *Rauch*, the police officers, without first knocking at the defendant's door or announcing their presence or purpose, simply entered the defendant's residence. After entering the house the officers seized a bag which apparently contained a large quantity of marijuana. Approximately one and one-half hours later a search warrant arrived. Our Supreme Court upheld suppression of the seized evidence on the ground the officers had violated the knock-and-announce statutes. The Court also ruled that exigent circumstances could justify noncompliance with the statutes, but upheld the trial court's determination that no exigent circumstances had been shown.

Here the trial court expressly found that exigent circumstances—the possibility of destruction of evidence or of flight by the defendant—excused compliance with the statutes. Therefore the court implicitly, but not expressly, found that the officers had not complied with the knock-and-announce statutes. Walker argues that the court erred in finding exigent circumstances were present. However, we need not review that determination. We can sustain the order denying suppression of the evidence upon another ground under the knock-and-announce statutes.

■■■■ The knock-and-announce statutes permit an officer to enter a closed resi-

dence—by breaking doors and windows if necessary—to make an arrest[5] or to execute a search warrant where the officer has been denied admittance after giving notice of his presence and authority and announcing his purpose for the desired entry. *See* cases collected at 68 Am.Jur.2d *Searches and Seizures* § 91 (1973). The primary purposes of such statutes are to protect the privacy of the occupant and to prevent situations which are conducive to violent confrontations between the occupant and individuals who enter without proper notice. *Sabbath v. United States*, 391 U.S. 585, 88 S.Ct. 1755, 20 L.Ed.2d 828 (1968); *State v. Rauch, supra.*

It has been held that where officers otherwise comply with knock-and-announce statutes by knocking, announcing their presence and disclosing their identity or authority, but state their purpose for entering only after they have gained entrance to the premises, substantial compliance with the statute has occurred and the entry is legal. *See People v. Garnett*, 6 Cal.App.3d 280, 85 Cal.Rptr. 769 (1970); *People v. Vasquez*, 1 Cal.App.3d 769, 82 Cal.Rptr. 131 (1969), *cert. denied*, 398 U.S. 938, 90 S.Ct. 1840, 26 L.Ed.2d 270 (1970); *People v. Doane*, 33 Mich.App. 579, 190 N.W.2d 259 (1971); *State v. Steingraber*, 296 N.W.2d 543 (S.D. 1980); *State v. Harris*, 12 Wash. App. 481, 530 P.2d 646 (1975); Annot. 70 A.L.R.3d 217 (1976). One court has recognized that "rigid compliance" with the knock-and-announce statute is not required; "[i]nstead, each case must be decided on its own particular circumstances since no two cases ... will be factually alike." *State v.*

---

4. The Idaho knock—and—announce statutes, relating to arrest (I.C. § 19—611) and to execution of search warrants (I..C. § 19—4409), are as follows:

   *Breaking doors and windows*—To make an arrest, if the offense is a felony, a private person, if any public offense, a peace officer, may break open the door or window of the house in which the person to be arrested is, or in which there is reasonable ground for believing him to be, after having demanded admittance and explained the purpose for which admittance is desired. [I.C. § 19—611.]

*Service of warrant—Breaking open doors—* The officer may break open any outer or inner door or window of the house, or any part of a house, or any thing therein, to execute the [search] warrant, if, after notice of his authority and purpose, he is refused admittance. [I.C. § 19—4409.]

5. Under *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), an entry to make a "routine" arrest, without a warrant, is unreasonable—absent exigent circumstances— and any evidence seized as a result of that entry cannot be used against the arrested person.

*Suits,* 73 Wisc.2d 352, 243 N.W.2d 206, 209 (1976), *citing State v. Meier,* 60 Wisc.2d 452, 210 N.W.2d 685 (1973). In *State v. Steingraber, supra,* the South Dakota Supreme Court addressed a situation similar to the instant case. That court said:

> Assuming that the provisions of SDCL 23A–35–8 [the South Dakota knock-and-announce statute] apply to entrances made through an open door, cf. *People v. Peterson,* supra, 108 Cal.Rptr. [835] at 839, 511 P.2d [1187] at 1191, [ (1973) ] we hold that Deputy Vollmer's announcement of his intention to execute the search warrant made simultaneously, or nearly so, with his entry into the living room constituted substantial compliance with the statute. Entry through an open door in full view of the occupants of the room is far different from the surreptitious, unexpected type of entry that the statute is designed to prevent.
>
> .   .   .   .   .
>
> ... Standing where he had a right to be, Deputy Vollmer was visible to the occupants within the room. Likewise, the occupants, together with the interior of the premises, were visible to Deputy Vollmer and his colleagues. Even if we accept defendant Meyers' version of the sequence of the events, Deputy Vollmer's announcement of his authority and purpose was so nearly contemporaneous with his entry into the living quarters that it constituted substantial compliance with SDCL 23A–35–8 and the purposes and policies that statute was designed to serve. Accordingly, we hold that the evidence seized pursuant to the warrant should not have been ordered suppressed.

*Id.* 296 N.W.2d at 545, 546.

■ Here, the officers knocked on Walker's door. He opened the door. The officers identified themselves. Their reason for entering the house was explained to Walker either before they entered or simultaneously with their entry or immediately after the entry. We believe the purposes of the knock-and-announce statute were served. We conclude that there was substantial compliance with the knock-and-announce statutes. We therefore uphold the result obtained by the district court in refusing to suppress the evidence based upon the knock-and-announce statutes, albeit for a reason different from that stated by the district court.

The order denying the appellant's motion to suppress is affirmed.

SWANSTROM, J., concurs.

BURNETT, Judge, concurring specially.

I join the Court in upholding the district judge's denial of Walker's motion to suppress evidence. However, I write separately because my views on two of the issues presented do not entirely correspond with those expressed in the Court's opinion.

I

With respect to probable cause for the search warrant, I would deem it unnecessary to employ the "totality of the circumstances" test enunciated in *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). That test prescribes a standard for reviewing a probable cause determination made in reliance upon information obtained from a confidential source. The *Gates* standard has superseded the former, two-pronged requirement that probable cause affidavits must establish the veracity of the confidential source and the basis of his knowledge. *See Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) *and Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). In the present case, I believe that both the informant's veracity and the basis of his knowledge were demonstrated by the electronically monitored conversation between the informant and Walker and by the informant's controlled purchase of marijuana from Walker. Consequently, even if the *Aguilar-Spinelli* requirements were still extant, I would hold that they had been satisfied.

My reason for making this observation is that I believe the *Gates* rule should be the

last resort, not the point of departure, in evaluating the sufficiency of evidence to establish probable cause. Although *Gates* held the *Aguilar-Spinelli* requirements to be unduly rigid, those requirements identify the common-sense concerns of a magistrate who is asked to rely upon information procured from an anonymous person. I think any impartial and conscientious magistrate would want to know, "Where did this person get his information?" and "Is he likely to be telling the truth?" Those, in essence, are the *Aguilar-Spinelli* questions. If the magistrate is dissatisfied with the answers to these questions, then he may examine the case as a whole to determine whether his doubts are resolved by the "totality of the circumstances" as denoted in *Gates.* By applying the *Gates* test only after these common-sense questions have been considered, the magistrate can put the "totality of circumstances" into proper context and he can maintain a prudent measure of caution about relying upon information attributed to undisclosed sources.

## II

Regarding the warrantless entry into Walker's home, and the securing of the premises, I agree with the Court's narrow reading and application of *Segura v. United States,* 52 U.S.L.W. 5128 (July 5, 1984). In that case, a five-member majority of the United States Supreme Court held that evidence seized under a valid search warrant was not rendered inadmissible by an earlier, illegal entry upon the premises. The *Segura* majority invoked a long-established "independent source" exception to the fourth amendment exclusionary rule. However, that exception—as I had understood it before *Segura*—meant simply that evidence obtained from a source separate and distinct from illegal activity was not tainted by the illegality and, therefore, was not subject to the exclusionary rule. *See, e.g., Wong Sun v. United States,* 371 U.S. 471, 487–88, 83 S.Ct. 407, 417–18, 9 L.Ed.2d 441 (1963); *Silverthorne Lumber Co. v. United States,* 251 U.S. 385, 392, 40 S.Ct. 182, 183, 64 L.Ed. 319 (1920). I entertain

some doubt whether a search under warrant can be treated as a truly separate and distinct source of evidence where an illegal entry has been made while applying for the warrant and in anticipation that the warrant will be issued. Accordingly, I believe *Segura* may embody a conceptual deficiency. I would not embrace it as unskeptically as do other members of the Court.

Nevertheless, *Segura* remains the federal law of the land, and it disposes of Walker's fourth amendment claim. Neither party in the instant case has urged the district court or our Court to decide whether the search-and-seizure provision of the Idaho Constitution, Art. I, § 17, affords an independent basis for suppressing the evidence. However, even if the state constitutional issue had been raised, we would be bound by our Supreme Court's recent declaration that Art. 1, § 17, "is to be construed consistently with the fourth amendment to the United States Constitution." *State v. Cowen,* 104 Idaho 649, 650, 662 P.2d 230, 231 (1983).

I respectfully question the wisdom of bonding our state constitution to the interpretive gloss spread upon its federal counterpart by the United States Supreme Court. But the fact remains that our Court is in no position to decide today whether the state exclusionary rule is affected by *Segura's* treatment of the "independent source" exception to the federal rule. That determination must await a future case in which the issue has been properly raised before the Idaho Supreme Court and the federal experience under *Segura* can be fully analyzed.